**Jimmy Lee NASH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–04–00059–CR.**

Court of Appeals of Texas, Texarkana.

Submitted May 20, 2005.

Decided July 11, 2005.

Discretionary Review Refused January 25, 2006.

Jeff Harrelson, Harrelson, Moore, Giles LLP, Texarkana, for appellant.

James H. Elliott, Asst. Dist. Atty., Texarkana, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

As we stated in our first opinion in this case, the surveillance videotape of May 31, 2001, shows Jimmy Lee Nash in a Texarkana convenience store, standing across the counter from Joanna Christensen (the clerk on duty that night), then brandishing something in his right hand, clambering over the counter, and ordering Christensen to open the cash register drawer. She complied, and Nash took approximately $47.00 from the register.

After a brief trial, a Bowie County jury convicted Nash of aggravated robbery and he was sentenced to forty years' imprisonment. In his initial appeal, *Nash v. State*, 115 S.W.3d 136, 141 (Tex.App.-Texarkana 2003, no pet.), we concluded the trial court erred by failing on the evidence elicited in that trial to charge the jury on the lesser included offense of robbery because there was evidence that the jury could have taken to show that Nash did not use a deadly weapon. On remand, Nash was retried, and for a second time was convicted of aggravated robbery and again sentenced to forty years' imprisonment.

On appeal, Nash contends the evidence was insufficient to show he either used or exhibited any item that could be found to be a deadly weapon, that the trial court erred by preventing counsel from making certain arguments at punishment, that the court erred by failing to grant his motion to quash the indictment, and that the court should have granted Nash's motion to appoint new counsel.

Nash committed aggravated robbery if he committed "robbery as defined in Section 29.02, and he ... use[d] or exhibit[ed] a deadly weapon...." *See* TEX. PEN.CODE ANN. § 29.03(a) (Vernon 2003). A "deadly weapon" is:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PEN.CODE ANN. § 1.07(17) (Vernon Supp.2004–2005).

Christensen testified Nash used an ice pick in the robbery. We have carefully and repeatedly reviewed the store videotape, which the State argues shows Nash holding a weapon. As we stated in our first opinion, the videotape does not reveal a weapon; certainly not conclusively. It is apparent Nash had something in his right hand, but what it was cannot be discerned—and what is visible does not appear to be metallic or a weapon. While the videotape's lack of a clearly visible weapon does not demonstrate that no weapon existed, it is some evidence that there was no weapon or that whatever Nash had in his hand was, due to its type or size, not deadly.

In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In reviewing the factual sufficiency of the evidence, we are required to determine whether, consider-

ing all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004).

■ Nash focuses his argument on the adequacy of the proof that he used a "deadly weapon" in the course of the robbery and on the question of whether the evidence shows he used or exhibited the weapon during the course of the robbery.

Christensen testified she saw a pointed piece of metal in Nash's hand; that it appeared to be a metal rod with a sharpened end that looked like an ice pick; that the metal part of the item was a minimum of five inches long; that Nash came over the counter, ordered her to open the register, put the tip against her body, and threatened her; and that she was afraid for her life.

Steve Shelley, the investigating officer, testified that such an item could indeed cause death or serious bodily injury and that in his opinion it was a deadly weapon. Though not clearly revealing a weapon, the videotape corroborates most of Christensen's testimony and clearly demonstrates Nash's proximity to Christensen, his threatening behavior toward her, and Christensen's fearful reactions.

■ As we pointed out in our opinion in the first appeal, several factors are involved in determining whether an object is capable of causing death or serious bodily injury: (1) the physical proximity between the victim and the object, *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex.Crim.App.1984) (op. on reh'g); (2) the threats or words used by the assailant, *Williams v. State*, 575 S.W.2d 30 (Tex.Crim.App. [Panel Op.] 1979); (3) the size and shape of the weapon, *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983); (4) the weapon's ability to inflict death or serious bodily

injury, *id.*; and (5) the manner in which the defendant used the weapon. *Id.* No single factor is determinative, and each case must be examined on its own facts. *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex.Crim.App.1986). Either expert testimony or lay testimony may be sufficient to support a finding. *English v. State*, 647 S.W.2d 667, 668–69 (Tex.Crim.App.1983). The weapon was not in evidence in this case, but a jury may determine the weapon was capable of causing death or serious bodily injury even if it is not in evidence. *See id.* at 669.

There is evidence that the object was placed against the victim and that Nash threatened to kill her, as well as testimony about the size and shape of the weapon, its ability to inflict harm or death, and the threatening manner in which it was used. The jury's duty is to weigh the evidence and determine the truth. The evidence set out above is both legally and factually sufficient to allow a jury to conclude the item was a deadly weapon, and also to show that the manner of its use could result in serious bodily injury. The evidence to the contrary is not so strong as to require us to make a different determination. *See Charleston v. State*, 33 S.W.3d 96, 100 (Tex.App.-Texarkana 2000, pet. ref'd).

■ Nash also complains because counsel was not permitted to argue the application of the parole law. The record shows that Nash asked to read and explain a portion of the statutorily required parole information charge to the jury. That charge went to the jury in its entirety. Defense counsel wanted to read the specific portion that stated:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less,

without consideration of any good conduct time he may earn.

Counsel stated that he wished to use this as a basis to inform the jury specifically that Nash would have to serve one half of any sentence the jury gave Nash, and that he was not eligible for parole for at least half of the time assessed.

Although counsel's statement of the law is correct, and although it was given to the jury in written form in the charge, TEX. CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp.2004–2005), provides explicitly (after telling the jurors how to apply the parole law) that the jury cannot consider the manner "in which the parole law may be applied to this particular defendant."

To allow counsel to argue as requested would ask the jury to specifically consider the law as to this particular defendant, which is by statute improper. We cannot conclude that the trial court erred by restricting final argument in this manner.

Nash next contends the court erred by failing to grant his motion to quash the indictment. Nash asked the trial court to quash the indictment because in this Court's prior opinion, we had stated not only that we were reversing because of a failure to provide a lesser included offense charge, but also because there was insufficient evidence to show the greater offense. This is incorrect. We clearly stated that the evidence was sufficient to support the jury's determination in that conviction. Counsel's argument is based on our statement that we did not reach some issues because we were reversing on other "grounds." Although the term is plural, it is a term of art often used in the plural for a singular meaning. In our prior opinion, the actual ruling within the body of the opinion is entirely clear, and the contention that the indictment should have been quashed because we had foreclosed a por-

tion of the charge has no merit. The contention of error is overruled.

Nash finally contends the trial court erred because it did not make proper inquiry into an alleged conflict of interest between defendant and defense counsel, and because the defendant's motion to appoint new counsel should have been granted. The record contains nothing that would support such an inquiry. It appears Nash had brought a grievance against trial counsel, but the grievance does not appear in the record, and counsel states in his brief that he did not receive the written grievance until two weeks after the trial was completed. In the absence of anything in the record to show such a conflict of interest, there is nothing to support this contention of error. The contention is overruled.

We affirm the judgment.