NO. 07-05-0162-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 13, 2006
_____

JOE R.  BROOKS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2004-407,311; HON. CECIL G. PURYEAR, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Appellant Joe R. Brooks appeals his conviction of aggravated assault with a deadly weapon.  In doing so, he challenges in three issues the legal and factual sufficiency of the evidence to support the jury finding that vise grips constituted a deadly weapon and the failure of the trial court to allow appellant to represent himself at the punishment phase of the trial.  We affirm the judgment of the trial court.

## *Issue 1 - Deadly Weapon*

The standards by which we review the legal and factual sufficiency of the evidence are well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Zuniga v. State,* 144 S.W.3d 477 (Tex. Crim. App. 2004), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000) for an explanation of them.

When a person is charged with using a deadly weapon, the evidence must establish that the instrument used was actually deadly. *Lockett v. State,* 874 S.W.2d 810, 814 (Tex. App.Dallas 1994, pet. ref'd). The Penal Code defines a "deadly weapon" as "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury . . . ." TEX. PEN. CODE ANN. §1.07(a)(17)(A) & (B) (Vernon Supp. 2005). While vise grips are not a deadly weapon *per se,* they may be shown to be so via evidence of their size, shape, manner of use or intended use, and capacity to produce death or serious injury. Additionally, evidence of the physical proximity between the victim and the object, threats or words used by the assailant, the size and shape of the weapon, the weapon's ability to inflict death or serious bodily injury, and the manner in which the defendant used the weapon are indicia susceptible to consideration. *Nash v. State,* 175 S.W.3d 427, 430 (Tex. App.–Texarkana 2005, pet. ref'd); *Bailey v. State,* 46 S.W.3d 487, 491 (Tex. App.– Corpus Christi 2001, pet. ref'd). Expert testimony regarding the deadly nature of an object may also be considered although it is not required, *see English v. State,* 647 S.W.2d 667, 668-69 (Tex. Crim. App. 1983), and a weapon need not

actually wound someone to qualify as a deadly weapon. *Denham v. State,* 574 S.W.2d 129, 130 (Tex. Crim. App. 1978).

The evidence shows that appellant, who was loitering around a 7-Eleven in Lubbock, 1) originally pointed the vise grips at customers in the parking lot as if he was shooting a gun at them, 2) yelled at Nate Turner and Kyle Dilbeck as they left the store and threatened to kill them, 3) changed his clothes several times out of a bag he was carrying while continuing to yell and curse at them, 4) approached Turner and Dilbeck within two feet of them,[1] and 5) took a swing at Dilbeck with his fist after which the vise grips fell out of his back pocket and he picked them up and swung them at Dilbeck. The vise grips were admitted into evidence and described as "good size," "pretty heavy," and "solid steel." Dilbeck stated he felt threatened with imminent bodily injury and that if appellant had actually struck him with the vise grips, it might have caused him serious bodily injury.

Police Officer Chris Farmer also testified that the vise grips were capable of causing serious bodily injury. Additionally, Officer Brad Hopper stated that by trying to strike someone in the head with the vise grips as appellant did, a person could be seriously injured or killed.

In light of this evidence, a rational jury could have concluded, beyond a reasonable doubt, that the weapon was capable of causing death or serious bodily injury in the manner of its use or intended use. Thus, legally sufficient evidence supports the finding that appellant used a deadly weapon during the assault. Moreover, when that finding is tested

---

[1]Turner and Dilbeck were waiting on the police who had been called by the convenience store manager. They informed appellant that the police had been called, but appellant responded that he had "killed all the cops." Dilbeck believed appellant was under the influence of a narcotic.

3

against the entire record it is not manifestly unjust. Nor does it undermine our confidence in the proceeding. It may well be that the evidence conflicted regarding whether appellant actually swung the vise grips at Dilbeck. Yet, that conflict was for the jury to decide, and there was ample evidence to support its decision. *See Nash v. State,* 175 S.W.3d at 430 (holding that a deadly weapon finding was supported by the object being placed against the victim, a threat to kill the victim, a description of the size and shape of the object as well as its ability to inflict harm or death, and the threatening manner in which it was used). Thus, it also has the support of factually sufficient evidence.

### *Issue 2 - Self-Representation*

Appellant argues in his second issue that the trial court erred in not allowing him to represent himself at the punishment phase of the hearing. We overrule the issue.

Appellant, who had appointed counsel, notified the trial court on the day of trial before *voir dire* commenced that he wished to represent himself. After admonishing appellant, the trial court allowed him to do so but asked that appointed counsel remain in court as standby counsel. In the middle of the guilt/innocence phase of the trial, appellant suddenly changed his mind and asked that his appointed counsel be allowed to represent him for the remainder of the trial. Again, the trial court agreed. However, prior to commencement of the punishment hearing, appellant once more sought to represent himself. At that time, the trial court refused the request. It is this ruling of which appellant complains.

A criminal defendant has the right to self-representation under the Sixth Amendment to the United States Constitution. However, the right must be timely asserted which means

4

before the jury is empaneled. *McDuff v. State,* 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); *Bansal v. State,* 169 S.W.3d 371, 377 (Tex. App.–Beaumont 2005, pet. dism'd); *Birdwell v. State,* 10 S.W.3d 74, 77 (Tex. Crim. App.–Houston [14th Dist.] 1999, pet. ref'd). Appellant's first request to represent himself was timely made, and the trial court granted it. However, his second request was not made until just prior to commencement of the punishment hearing. By that time, he had previously informed the court that he was "going to let [appointed counsel] take control of it." The court had also asked appellant if it was all right if the jury was informed that he (appellant) had decided to have counsel represent him the rest of the trial to which appellant responded, "[y]es, sir," and the jury was so informed. A defendant who initially asserts the right to represent himself may later abandon that right by inviting participation by counsel and thereby waiving the right of self-representation. *Funderberg v. State,* 717 S.W.2d 637, 642 (Tex. Crim. App. 1986); *Carroll v. State,* 176 S.W.3d 249, 254 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd); *Garrett v. State,* 998 S.W.2d 307, 317 (Tex. App.–Texarkana 1999, pet. ref'd, untimely filed). Waiver may be found if it reasonably appears to the court that the defendant has abandoned his initial request to represent himself. *Funderburg v. State,* 717 S.W.2d at 642. Based on the record before us, we find that the trial court reasonably could have so found. Therefore, it did not err in denying appellant opportunity to represent himself during the remainder of the trial.

Having overruled each issue, we affirm the judgment of the trial court.


Per Curiam

Do not publish.

5