NO. 07-06-0034-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 1, 2006


______________________________



JEFFREY BRINSON, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;



NO. 2553; HON. DAVID MCCOY, PRESIDING


_______________________________



 Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Jeffrey Brinson was convicted of aggravated assault with a deadly weapon. He
argues on appeal that the evidence is legally and factually insufficient to show that the
pavement against which he struck the victim's head was a deadly weapon. We overrule
the issue and affirm the judgment of the trial court. 

 The standards by which we review the legal and factual sufficiency of the evidence
are well established. We refer the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979), Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004),
Zuliani v. State, 97 S.W.3d 589 (Tex. Crim. App. 2003), and King v. State, 29 S.W.3d 556
(Tex. Crim. App. 2000) for an explanation of them. 

 Next, when a person is charged with using a deadly weapon, the evidence must
establish that the instrument used was actually deadly. Lockett v. State, 874 S.W.2d 810,
814 (Tex. App.-Dallas 1994, pet. ref'd). Furthermore, the Penal Code defines a "deadly
weapon" as "anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury; or . . . anything that in the manner of its use or intended use
is capable of causing death or serious bodily injury . . . . " Tex. Pen. Code Ann.
§1.07(a)(17)(A) & (B) (Vernon Supp. 2005). While asphalt pavement may not be a deadly
weapon per se, it may be shown to be so via evidence of its manner of use or intended use
and its capacity to produce death or serious bodily injury. Additionally, evidence of threats
or words used by the assailant may be considered. Nash v. State, 175 S.W.3d 427, 430
(Tex. App.-Texarkana 2005, pet. ref'd); Bailey v. State, 46 S.W.3d 487, 491 (Tex.
App.-Corpus Christi 2001, pet. ref'd). Finally, while expert testimony regarding the deadly
nature of an object may be offered, it is not required. English v. State, 647 S.W.2d 667,
668-69 (Tex. Crim. App. 1983). 

 Appellant argues that the evidence is insufficient because it does not show injury
or that the use of the pavement could have caused death or serious bodily injury. (1) We
initially note that the weapon need not actually cause death or serious bodily injury to be
classified as deadly. It is enough simply to show that its use or intended use had the
capability of causing same. English v. State, 171 S.W.3d 625, 628 (Tex. App.-Houston
[14th Dist.] 2005, no pet.). Additionally, the record shows that 1) appellant had choked the
victim with his hands to such a degree that she could not breathe, 2) appellant then threw
her on the ground, climbed atop her, put his hands on her ears, and slammed her head
into the pavement, 3) while doing so, he told her he was going to kill her and she believed
that he would, and 4) she had bruises and a knot on her head and was diagnosed with a
concussion as a result of the incident. This is some evidence from which a jury could have
rationally concluded beyond reasonable doubt that the pavement (as used by appellant)
was capable of causing serious bodily injury or death, and such a conclusion would not
undermine our confidence in the proceeding when tested against the entire record. See
English v. State, 171 S.W.3d at 628 (holding that the evidence was sufficient to show that
an aluminum baseball bat was used as a deadly weapon when it was swung with full force
at the victim's head causing pain, a gash, bruising, swelling, and a concussion, the victim
was extremely afraid, and the defendant told the victim he intended to kill him). 

 Consequently, we affirm the judgment of the trial court.


 Brian Quinn 

 Chief Justice


Do not publish.
1. The indictment also alleged that bodily injury was caused by appellant choking the victim and that
he used a deadly weapon to do so, namely his hands. Appellant does not contest whether his hands were
used as a deadly weapon. 



r because he was
seeking medical treatment in New Mexico, (2) allowing R.T. Mills to testify regarding
hearsay testimony of the alleged victim, James O’Neal Mills, (3) finding that he violated the
condition of community supervision that he commit no offense, (4) finding that he violated
the condition of community supervision that he report in person or in writing, and (5) failing
to grant his motion for new trial when it was presented that new evidence had been
received which would contradict hearsay testimony presented by the State. We affirm.
          Generally, Appellant contends that he was harmed by the trial court’s alleged errors
in two ways: (1) by the trial court’s decision to adjudicate, and (2) by the trial court’s
assessment of punishment. We will address each contention separately.
 

Background
          Condition 9 of Appellant’s community supervision required him to “abstain from the
consumption of alcohol in any form and at any time.” Appellant testified that one Monday
after work, he and some co-workers wanted to “party a little bit and celebrate.” They
bought liquor and beer and he admitted to drinking a “little liquor because [he] can’t handle
liquor.” He also admitted to consuming beer. According to Appellant, James Mills, who
was very intoxicated, wanted to go get drugs. They did not have any money and tried to
trade jewelry for drugs, but were unsuccessful. Appellant testified that James asked him
to make another “run” and he refused. James began walking down the road with a fifth of
Jose Cuervo and Appellant did not see him again that night. James later accused
Appellant of robbing him with a knife, an allegation which he denied.
          James’s brother, R.T. Mills, testified over objection that James told him he was
robbed with a knife by two co-workers, a “guy named Stephen and a guy named Gilbert.” 
Mills testified that James was crying, upset, and an “emotional wreck.” The trial court
allowed the testimony as an excited utterance, despite Mills’s testimony that he was able
to calm James down before going to the sheriff’s department.
          Deputy Billy Joe Selfridge testified that he was on duty when James came in to
report being robbed. He testified that James did not show physical signs of injury, but was
jerking, shaking, breathing hard, and scared. An ambulance was called, and he was taken
to the hospital. 
          While on community supervision, Appellant was supervised primarily by Lupe
Chavez. Appellant testified that he and Chavez had a good relationship. Chavez was
unavailable at the hearing on the State’s motion to adjudicate due to undergoing treatment
for an illness in New Mexico. However, Leonard Tex Selvidge, an officer who had
supervised Appellant briefly, testified from Appellant’s records. 
          Selvidge testified that he was the person who initially reviewed the conditions and
terms when Appellant was first placed on community supervision. Each condition was read
and Appellant did not indicate a lack of understanding. According to the records, Appellant
did not report to the Community Supervision Department in November and December
2007, nor in January, February, March, April, and May 2008. Selvidge also testified from
Appellant’s records about other violations of the conditions of community supervision.
          After presentation of all evidence, the trial court found as true three of the State’s
allegations in its motion to adjudicate. Specifically, the court found sufficient evidence that
Appellant, while in the course of committing theft, intentionally or knowingly threatened or
placed James Mills in fear of imminent bodily injury or death while using or exhibiting a
knife. The court also found that Appellant failed to report as required for the months of
November and December 2007 and January through May 2008. Finally, the trial court
found that Appellant consumed alcohol while on community supervision. The court
revoked Appellant’s community supervision and granted the State’s motion to adjudicate.
          During the punishment phase, the State recommended the maximum sentence of
ten years while Appellant asked for leniency. Considering the underlying offense of assault
on a public servant and the new offense of assault with a deadly weapon, the trial court
sentenced Appellant to ten years confinement but found that a fine would be meaningless.
Decision to Adjudicate
Standard of Review
          When reviewing an order revoking community supervision imposed under an order
of deferred adjudication, the sole question before this Court is whether the trial court
abused its discretion. Rickels v. State, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006);
Cardona v. State, 665 S.W.2d 492, 493 (Tex.Crim.App. 1984); Jackson v. State, 645
S.W.2d 303, 305 (Tex.Crim.App. 1983). In a revocation proceeding, the State must prove
by a preponderance of the evidence that the probationer violated a condition of community
supervision as alleged in the motion to revoke. Cobb v. State, 851 S.W.2d 871, 874
(Tex.Crim.App. 1993). If the State fails to meet its burden of proof, the trial court abuses
its discretion in revoking community supervision. Cardona, 665 S.W.2d at 494. In
determining the sufficiency of the evidence to sustain a revocation, we view the evidence
in the light most favorable to the trial court's ruling. Jones v. State, 589 S.W.2d 419, 421
(Tex.Crim.App. 1979). Additionally, a plea of true standing alone is sufficient to support
a trial court’s revocation order. Moses v. State, 590 S.W.2d 469, 470 (Tex.Crim.App.
1979). 
Discussion
          Mindful of the five points of error raised by Appellant, his plea of true to consumption
of alcohol is alone sufficient to support the trial court’s adjudication of guilt. Additionally,
Appellant’s own testimony confirmed that he consumed alcohol while on community
supervision.  Consequently, the trial court did not err in its decision to adjudicate Appellant
guilty as charged.
Assessment of Punishment
          The crux of Appellant’s argument is that his punishment would have been different 
had the trial court not erred in its decisions to proceed without the testimony of his primary
supervision officer, Lupe Chavez, and to admit the testimony of R. T. Mills concerning the
alleged hearsay statements of his brother, James Mills. Assuming, arguendo, that the trial
court erred in either decision, “the decision of what punishment to assess after adjudicating
the defendant guilty is a purely normative process, not intrinsically factbound, and is left
to the unfettered discretion of the trial judge.” Smith v. State, 286 S.W.3d 333, 344
(Tex.Crim.App. 2009). It is also the general rule that a sentence imposed within the range
of punishment established by the Legislature will not be disturbed on appeal. Jackson v.
State, 680 S.W.2d 809 (Tex.Crim.App. 1984). Because the punishment assessed did not
exceed the range of punishment provided by law, Appellant occasioned no reversible
harm.
          Accordingly, we overrule Appellant’s issues and affirm the trial court’s judgment.




                                                                           Patrick A. Pirtle

                                                                                 Justice



Do not publish.