NO. 07-05-0423-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 29, 2006

_____

ADAM SILVA,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 106TH DISTRICT COURT OF GARZA COUNTY;

NO. 05-2274; HON. CARTER SCHILDKNECHT, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Adam Silva was convicted of attempted murder and assault-family violence.  A deadly weapon finding was made for both offenses.  In four issues, he contends the evidence is legally and factually insufficient to sustain his conviction of attempted murder and  the evidence is legally and factually insufficient to sustain the deadly weapon finding with respect to that offense.  We affirm the judgment of the trial court.

## Background

While appellant was out on the evening of February 13, 2005, he called his wife Marisa and yelled at her wanting to know "[h]ow many niggers [she had] fucked." When he returned home in an intoxicated state, he yelled at her as he exited the vehicle and called her "a nigger lover." As he walked up to the front porch where Marisa was standing, appellant told her he would make her life miserable and "start killing [her] family off one by one" if she called the police. At that point, she told him their relationship was over.

Appellant then grabbed her neck and began choking her. When Marisa kicked appellant, he turned loose, stepped back, and hit her in her left jaw with his closed fist. Appellant next asked Marisa if she "wanted some more" and punched her in the stomach after which he told her "it was never going to be over." Marisa tried to call her cousin on her cell phone but before she could talk to him, appellant hit Marisa in her right temple with his fist. Next, he grabbed her neck and began choking her again. When Marisa's cousin arrived, appellant ceased abusing her. The police arrived a short time later.

## Attempted Murder

First, appellant argues that a specific intent to kill is a necessary element of murder that is missing from this record. The standards by which we review the legal and factual sufficiency of the evidence are well established. We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Zuniga v. State,* 144 S.W.3d 477 (Tex. Crim. App. 2004), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000) for their explanation.

2

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PEN. CODE ANN. §19.02(b)(1) (Vernon 2003); *Roberson v. State,* 144 S.W.3d 34, 38-39 (Tex. App.–Fort Worth 2004, pet. ref'd) (stating that only murder under §19.02(b)(1) requires the specific intent to kill). A person commits attempted murder if with the specific intent to commit murder, he does an act amounting to more than mere preparation that tends but fails to effect the murder. TEX. PEN. CODE ANN. §15.01(a) (Vernon 2003). A defendant's intent may be inferred by words, acts, or deeds. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Girdy v. State,* 175 S.W.3d 877, 880 (Tex. App.–Amarillo 2005, pet. ref'd).

Appellant argues that the evidence is insufficient because there was no use of a deadly weapon *per se,* no threat of death was made to Marisa, the attack ended without intervention by a third party, Marisa did not sustain any serious injuries, and he grabbed Marisa's throat with only one hand. The State is not required to prove the victim suffered bodily injury to convict an accused of attempted murder. *Moreno v. State,* 755 S.W.2d 866, 869 (Tex. Crim. App. 1988). Thus, we look at the inference of intent that can be made from appellant's acts, words, and the circumstances surrounding the event in which 1) appellant threatened to kill Marisa's family, 2) appellant grabbed Marisa's neck in such a way that it felt like "he was trying to kill [her]," he cut off her air, and he caused her pain, 3) appellant made red marks on Marisa's neck where he choked her, 4) appellant hit Marisa in the head and stomach with his fist causing her pain and resulting in red marks and bruises on her face, 5) appellant told Marisa that their relationship would never be over, 6) appellant turned Marisa loose when her cousin arrived, and 7) Marisa bled from

3

the scratches on her neck, had a knot on her temple, had blurred vision for five or ten minutes, had an x-ray taken of her head the next day, and still suffers from headaches which she never had prior to this incident.

While there was no direct testimony that appellant released Marisa because of the arrival of her cousin, Marisa testified appellant was choking her just prior to her cousin's arrival and the jury could have inferred that was the reason he did so. Moreover, even though appellant used only one hand to choke her, she believed he was trying to kill her. This evidence is sufficient to allow a rational trier of fact to find the element of intent beyond a reasonable doubt. And, though appellant asserts that he never threatened to kill Marisa, the violent nature of his acts, the accusations he leveled against her, his violent state of mind during the attack, and the physical assaults not only indicate otherwise but also provide ample foundation allowing the factfinder to reasonably infer that appellant intended to kill Marisa. Lastly, the finding is neither manifestly unjust nor does it undermine our confidence in the outcome.

### Deadly Weapon

Next, appellant attacks the deadly weapon finding of the jury. When a person is charged with using a deadly weapon, the evidence must establish that the instrument used was actually deadly. *Lockett v. State,* 874 S.W.2d 810, 814 (Tex. App.–Dallas 1994, pet. ref'd). The Penal Code defines a "deadly weapon" as "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or . . . anything that in the manner of its use or intended use is capable of causing death or serious bodily injury . . . ." TEX. PEN. CODE ANN. §1.07(a)(17)(A) & (B) (Vernon Supp. 2005). And, while appellant's fists or hands, as charged here, are not deadly weapons *per se*, they may be

4

shown to be so via evidence of their manner of use or intended use and capacity to produce death or serious injury. *Turner v. State,* 664 S.W.2d 86, 90 (Tex. Crim. App. 1983); *Gillum v. State,* 888 S.W.2d 281, 288 (Tex. App.–El Paso 1994, pet. ref'd). Additionally, evidence of the physical proximity between the victim and the object and threats or words used by the assailant are subject to consideration. *Nash v. State,* 175 S.W.3d 427, 430 (Tex. App.–Texarkana 2005, pet. ref'd); *Bailey v. State,* 46 S.W.3d 487, 491 (Tex. App.–Corpus Christi 2001, pet. ref'd). Finally, while expert testimony regarding the deadly nature of the object may be offered, it is not required. *English v. State,* 647 S.W.2d 667, 668-69 (Tex. Crim. App. 1983).

There was evidence that appellant struck Marisa multiple times and attempted to choke her. This along with her testimony that she could not breathe and felt he was trying to kill her, the choking, the situs of the blows to her head, and photographs of the contusions, bumps, scratches, and other injuries she suffered were both legally and factually sufficient to allow the jury to find that appellant's hands and fists were deadly weapons. *See Petruccelli v. State,* 174 S.W.3d 761, 770 (Tex. App.–Waco 2005, pet. ref'd) (stating the evidence was factually sufficient to support a finding that the defendant's hands were deadly weapons when the defendant admitted he hit the victim and there was testimony that her injuries were consistent with being beaten multiple times with someone's hands).

Appellant's issues are overruled, and we affirm the trial court's judgment.

Per Curiam

Do not publish.

5