In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00103-CV


______________________________





IN RE:


GARY WAYNE LOWE









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Upset that the Texas Court of Criminal Appeals has already denied his previous efforts to
obtain relief, Gary Wayne Lowe has filed a petition for writ of mandamus which asks us to direct
the trial court to delete an order that "stacked" his 1988 sentences for murder and aggravated sexual
assault. We conclude that Lowe has an adequate remedy available and that res judicata precludes
our ability to grant such relief. Accordingly, we deny Lowe's petition.

 "The function of the writ of mandamus is to compel action by those who by virtue of their
official or quasi-official positions are charged with a positive duty to act." In re Castle Tex. Prod.
Ltd. P'ship, 189 S.W.3d 400, 403 (Tex. App.--Tyler 2006, orig. proceeding) (referencing Boston
v. Garrison, 152 Tex. 253, 256 S.W.2d 67, 70 (1953)). "It is not a writ of right, and its issuance is
within the sound discretion of the court, a discretion to be exercised by the application of fixed
principles." Id. (citing Westerman v. Mims, 111 Tex. 29, 227 S.W.2d 178, 181 (1921)). We may
grant a petition for writ of mandamus when the applicant shows "(1) that the act sought to be
compelled is purely ministerial and (2) that there is no adequate remedy at law." Aranda v. Dist.
Clerk, 207 S.W.3d 785, 786 (Tex. Crim. App. 2006) (orig. proceeding) (citing Winters v. Presiding
Judge of Criminal Dist. Court No. Three, 118 S.W.3d 773, 775 (Tex. Crim. App. 2003)); see also
D.R. Horton, Inc. v. Brooks, 207 S.W.3d 862, 866 (Tex. App.--Houston [14th Dist.] 2006, orig.
proceeding). 

 Two problems exist with Lowe's present petition for writ of mandamus.

 First, Lowe has an available remedy through which to seek relief: He may file an application
for writ of habeas corpus with the trial court, made returnable to the Texas Court of Criminal
Appeals. See Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp. 2008). According to our
independent research, Lowe has previously filed several post-conviction applications for
extraordinary writs with the Texas Court of Criminal Appeals. (The Texas Court of Criminal
Appeals' website shows he has filed at least seven such previous petitions, and these include
applications for writs of habeas corpus, prohibition, and mandamus.) The availability of an
alternative avenue for relief precludes our ability to consider the merits of Lowe's petition for writ
of mandamus.

 Second, Lowe concedes in his current petition for writ of mandamus that he has previously
filed an application for writ of habeas corpus with the Texas Court of Criminal Appeals in which he
indirectly contested the propriety of the sentence stacking order via a claim of ineffective assistance
of counsel. This state's highest criminal court denied relief on that claim without written order. We
believe that challenging the propriety of the stacking order via an ineffective assistance claim is no
different than challenging the propriety of the stacking order itself--because if the stacking order
were improper, then ineffective assistance would necessarily have been shown and, we have no
doubt, the Texas Court of Criminal Appeals would have granted relief via habeas. Therefore, the
court's decision on this issue is now the law of the case, which we may not disturb in this type of
collateral attack. Cf. Adams v. State, 222 S.W.3d 37, 56 (Tex. App.--Austin 2005, pet. ref'd)
(appellant raised same issue in civil appeal and was denied relief; "law of the case" doctrine
precluded appellate court from reconsidering claim in criminal appeal and granting relief). 

 Each reason compels us to deny relief.




 Jack Carter

 Justice




Date Submitted: September 23, 2008

Date Decided: September 24, 2008



authorized by the indictment,
does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories
of liability, and adequately describes the particular offense for which the defendant was tried. 
Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997). The indictment in this case charged Guevara with using and exhibiting,
while in the course of committing theft, a deadly weapon, namely: an ice pick, and/or screwdriver,
and/or a pointed object with a handle, and intentionally and knowingly placing Burkett in fear of
imminent bodily injury or death. 

 Guevara focuses his argument on the adequacy of the proof that he used a "deadly weapon"
in the course of the robbery and on the question of whether the evidence shows he used or exhibited
the weapon during the course of the robbery. 

 On this issue, Burkett testified that Guevara used an ice pick in the robbery. When Guevara
walked behind the service counter of the bank where Burkett was seated, Burkett noticed what she
believed was an ice pick in his hand which was held in an upward position. The object held by
Guevara was described by Burkett as being sharp and having a wooden handle. After Guevara made
his way behind the service counter with the ice pick, Guevara appeared to mumble and Burkett
understood only the word "money." After Guevara took the money from the cash drawer, he put it
in a bag and then directed Burkett down the hall to the server room. The room was locked and
Burkett had to return to the counter area to get her keys. Guevara then maneuvered Burkett back to
the server room. Burkett testified that she felt threatened and afraid with Guevara behind her carrying
an ice pick and that she did not know what was going to happen. At that point, Guevara placed
Burkett's hands behind her back and tied her thumbs together. After Guevera left, Burkett called the
police. 

 Investigator Warren Mitchell of the Greenville Police Department conducted the investigation
of the robbery. When he arrived at the bank, Burkett was upset and visibly shaking. 

 Guevara was arrested on the day of the robbery, was admonished concerning his rights, and
was taken into custody by Mitchell for questioning. (2) A videorecording of the interview was admitted
into evidence at trial without objection and played for the jury. (3) During that interview, Guevara
admitted that he used a screwdriver (4) as a weapon in the robbery. The content of the statement was
verified by Rodriguez. 

 Officer Chris Neaville with the Greenville Police Department was on patrol the day of the
robbery and responded to the call. Neaville testified that he has been a police officer for the past
twelve years and has had the opportunity to investigate violent crimes. In Neaville's opinion, an ice
pick or a screwdriver is capable of causing serious bodily injury or death.

 Guevara's own admission on the day of the robbery was that he used a screwdriver as a
weapon in the robbery, along with Burkett's testimony that Guevara held an ice pick in his right hand
establishes the fact that Guevara used or exhibited such an item during the robbery. The sole question
before this Court is whether a screwdriver qualifies as a "deadly weapon" under Section 1.07(a)(17)
of the Texas Penal Code. Tex. Penal Code Ann. § 1.07(a)(17) (Vernon Supp. 2009).

 Several factors are involved in the determination of whether an object is capable of causing 
death or serious bodily injury: (1) the physical proximity between the victim and the object; (5) (2) the
threats or words used by the assailant; (6) (3) the size and shape of the weapon; (7) (4) the weapon's ability
to inflict death or serious bodily injury; (8) and (5) the manner in which the defendant used the weapon. (9) 
No one factor is determinative, and each case must be examined on its own facts. Brown v. State, 716
S.W.2d 939, 946-47 (Tex. Crim. App. 1986). 

 Guevara argues that the foregoing factors, when applied to this case, point to the conclusion
that the screwdriver was not used as a deadly weapon. There is no evidence that Guevara threatened
to kill Burkett. While Burkett testified that the screwdriver was held in an upright position in front
of her, the screwdriver was never pressed against Burkett's body during the robbery. Moreover, there
was testimony from Burkett describing the screwdriver as sharp and as having a wooden handle, but
the description is scant and the screwdriver was not in evidence, as it was not recovered during the
course of the investigation. (10) These items militate in favor of a determination that the screwdriver
was not a deadly weapon in this circumstance. 

 On the other hand, Burkett testified that she clearly saw the weapon in Guevara's right hand
and she believed that weapon to be an ice pick. Burkett felt threatened and was scared. She felt as
if she was in danger, that the weapon was a threat to her and that at any moment she could have been
injured. Burkett remained calm and did as she was told in order to survive the ordeal. 

 The statute provides that "anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury" is a deadly weapon. (11) The provision's plain language does
not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon
if the actor intends a use of the object in a manner in which it would be capable of causing death or
serious bodily injury. McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Here, there is
evidence that the screwdriver was held in an upright manner in front of Burkett and that Guevara
carried the screwdriver with him during the course of the robbery. The jury could reasonably infer
from this evidence that Guevara's purpose in carrying the screwdriver during the course of the robbery
evidenced an intention to use it in a manner in which it would be capable of causing death or serious
bodily injury. While expert testimony is no longer required, (12) Officer Neaville's testifying to the
capability of a screwdriver to cause serious bodily injury or death is in support of the jury's findings. 
 Admittedly, a screwdriver is not an inherently dangerous object. However, when utilized in
a manner which causes or has the potential to cause death or serious bodily injury, objects which are
not inherently dangerous may be found to be deadly weapons under Section 1.07(a)(17)(B) of the
Texas Penal Code. See Hill v. State, 913 S.W.2d 581 (Tex. Crim. App. 1996) (the use of belts,
chains, and locks to prevent a child from eating constituted the use of a deadly weapon in denying
food to the child); Stanul v. State, 870 S.W.2d 329 (Tex. App.--Austin 1994, pet. dism'd, pet ref'd
[2 pets.]) (defendant used floor as deadly weapon by striking victim's head against it); Lozano v. State,
860 S.W.2d 152 (Tex. App.--Austin 1993, pet. ref'd) (defendant used lighter as deadly weapon by
using it to start a fire); Enriquez v. State, 826 S.W.2d 191 (Tex. App.--El Paso 1992, no pet.)
(defendant used soft drink bottle as deadly weapon by striking victim with it); Escobar v. State, 799
S.W.2d 502 (Tex. App.--Corpus Christi 1990, pet. ref'd) (baseball bat used to bludgeon victim
constituted deadly weapon); Cooper v. State, 773 S.W.2d 749 (Tex. App.--Corpus Christi 1989, no
pet.) (defendant used hands as deadly weapon by dropping infant to floor); Rice v. State, 771 S.W.2d
599 (Tex. App.--Houston [14th Dist.] 1989, no pet.) (defendant used gasoline as deadly weapon by
pouring it over victim and then igniting it); Johnson v. State, 770 S.W.2d 72 (Tex. App.--Texarkana
1989), aff'd, 815 S.W.2d 707 (Tex. Crim. App. 1991) (defendant used hands and feet as deadly
weapons by beating and kicking victim to death); Roberts v. State, 766 S.W.2d 578 (Tex.
App.--Austin 1989, no pet.) (defendant used truck as deadly weapon in colliding with car, injuring
and killing occupants); Harper v. State, 753 S.W.2d 516 (Tex. App.--Houston [1st Dist.] 1988, pet.
ref'd) (defendant used rope or cord as deadly weapon by tying it around victim's neck, restricting her
breathing); Shockley v. State, 747 S.W.2d 470 (Tex. App.--Houston [1st Dist.] 1988, no pet.)
(defendant used fabric or hands as deadly weapon by strangling victim); Cervantes v. State, 706
S.W.2d 685 (Tex. App.--Houston [14th Dist.] 1986, no pet.) (defendant used board as deadly weapon
by striking victim with it); Garza v. State, 695 S.W.2d 726 (Tex. App.--Dallas 1985), aff'd, 725
S.W.2d 256 (Tex. Crim. App. 1987) (by placing broken metal belt buckle in his hand when striking
at officer, defendant used the belt buckle as deadly weapon); Terry v. State, 672 S.W.2d 236 (Tex.
App.--Waco 1983) (defendant used plastic bag as weapon by placing it over victim's head,
suffocating her), rev'd in part on other grounds, 692 S.W.2d 496 (Tex. Crim. App. 1985).

 The objects described in the foregoing cases, while not inherently dangerous, were found to
be deadly weapons based upon the manner in which they were used. This concept extends to the
manner in which an object is used, even when, as in this case, the object is not utilized to cause actual
injury. Illustrative of this principle is the case of Adame v. State, 69 S.W.3d 581 (Tex. Crim. App.
2002), in which the question before the trial court was whether there was evidence that the defendant
displayed a BB gun to the convenience store clerk and whether there was sufficient evidence that the
gun was capable of causing serious bodily injury if pointed and fired at someone to support the jury's
deadly weapon finding. The court determined that the significant issue was whether the BB gun was
capable of causing serious bodily injury. Id. at 582 (citing McCain, 22 S.W.3d at 503) ("an object
is a deadly weapon if the actor intends a use of the object in which it would be capable of causing
death or serious bodily injury"). Thus, even though the BB gun was unloaded at the time of the
robbery, the court determined that the evidence in support of the deadly weapon finding was sufficient
because the State proved that the weapon used was capable of causing serious bodily injury or death
in its use or intended use. Id. at 582.

 There is not a need to show an intent on the part of the actor to use an object as a deadly
weapon. Sierra v. State, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). Rather, it is proper to make
a two-fold evaluation: (1) there should be an evaluation of the manner in which an object was used
during the commission of a felony and (2) it should be considered whether during commission of the
felony, the object in question was capable of causing death or serious bodily injury. Id. at 255. 

 In the case at bar, there is evidence that the screwdriver was held up in front of Burkett; a
description is provided by Burkett of the screwdriver (then believed by her to be an ice pick); 
Guevara admits to using the screwdriver in the course of the robbery; Burkett was scared and felt
threatened; and Burkett was visibly shaking and upset after the robbery. In addition, there is
testimony regarding the ability of a screwdriver to inflict harm or death. It is the province of the jury
to weigh the evidence and arrive at the truth. The foregoing evidence is both legally and factually
sufficient to allow a jury to conclude that the manner in which Guevara used the screwdriver during
the robbery rendered it capable of causing death or serious bodily injury. The evidence to the contrary
is not so strong as to require a different determination. See Nash v. State, 175 S.W.3d 427, 430 (Tex.
App.--Texarkana 2005, pet. ref'd).

III. CONCLUSION

 We conclude that the evidence at trial was legally and factually sufficient to support the jury's
verdict convicting Guevara of aggravated robbery. Accordingly, we affirm the trial court's judgment.

 


 Bailey C. Moseley

 Justice


Date Submitted: October 5, 2009

Date Decided: October 28, 2009


Do Not Publish 
1. See Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).
2. Because Guevara speaks primarily Spanish, Spanish-speaking officer Ramon Rodriguez with
the Greenville Police Department assisted with the interview and acted as a translator. 
3. Also introduced into evidence at trial was the videorecording of the robbery, as captured on
the bank's video recording equipment. This recording reveals an object in Guevara's right hand, but
it is not clear what the object is. 
4. Burkett identified the object in Guevara's hand as an ice pick, but Guevara admitted to
having a screwdriver. For clarity, we will refer to the weapon in question as a screwdriver. 
5. Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (op. on reh'g); Nash v. State,
175 S.W.3d 427 (Tex. App.--Texarkana 2005, pet. ref'd).
6. Williams v. State, 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979).
7. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983).
8. Id.
9. Id.
10. We note that introducing the weapon in evidence assists the jury, but the jury may
determine the weapon was capable of causing death or serious bodily injury even if it is not in
evidence. Charleston v. State, 33 S.W.3d 96, 100 (Tex. App.--Texarkana 2000, pet. ref'd).
11. Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2009).
12. English v. State, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983).