

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00198-CR

_____

EDWIN ANTONIO OSORIO-LOPEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 17927

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

O P I N I O N

After a jury trial in Upshur County, Edwin Antonio Osorio-Lopez was convicted of evading arrest or detention with a vehicle and aggravated assault with a deadly weapon.[1] Osorio-Lopez was sentenced to concurrent ten-year and twenty-year sentences, respectively. In this appeal of his conviction of aggravated assault with a deadly weapon,[2] Osorio-Lopez claims that (1) the trial court erred in not granting his motion for continuance to allow for a competency examination, and (2) the evidence was insufficient to establish that a food tray is a deadly weapon.

By order dated August 14, 2019, we sustained Osorio-Lopez's first point of error and abated this case to the trial court with instructions to conduct a retrospective competency trial, if such a trial were feasible. We have reviewed the supplemental reporter's records and the supplemental clerk's records showing that on November 5, 2019, the trial court found that a retrospective competency trial was feasible. The supplemental records further indicate that the trial court conducted the retrospective competency trial on February 25, 2020, and found Osorio-Lopez to have been competent at the trial resulting in the conviction which is the subject of this appeal. We turn to Osorio-Lopez's remaining point of error.

I.      Background

In December 2017, Osorio-Lopez was being held in a separation cell of the Upshur County Jail. On December 14, Jailer Frank Lower received a call from Jailer Richard Rawls requesting

---

[1]See TEX. PENAL CODE ANN. §§ 38.04(b)(2)(A), 22.02.

[2]In companion cause number 06-18-00197-CR, Osorio-Lopez appeals from his conviction of evading arrest or detention with a vehicle.

2

backup to enter Osorio-Lopez's separation cell to retrieve a food tray. Rawls's call for backup was prompted by Osorio-Lopez's failure to comply with requests to pass the food tray through the tray slot in the cell door[3] and by his disruptive behavior in repeatedly throwing the tray against the door. As Rawls opened the door, Osorio-Lopez threw the food tray with force and struck Lower in the forehead. Lower was dazed by the blow but did not lose consciousness. According to Osorio-Lopez, the jailers opened his cell door and asked for the food tray. When he attempted to hand the tray over, the jailers instructed him to throw it on the floor. Osorio-Lopez stated that he threw the tray on the floor and never intended to hit Lower in the face with it.

Lower was treated at the jail's medical unit and was then transported by ambulance for medical attention. He testified that the blow to his head caused headaches that lasted for approximately two weeks. The State introduced exhibits depicting Lower's injury,[4] which was described by Lower as a "[p]retty good size knot" on the forehead. According to Lower, a photo of him taken later in the evening of the assault depicts him as having two black eyes. Lower testified that he was back to normal within two weeks of the injury.

The Upshur County Jail continued to use the same food trays following Lower's injury as the one used to strike Lower. This type of food tray used is commonly used in jails throughout the State of Texas.

---

[3]Elizabeth Carrion, a jailer at the Upshur County Jail, speaks Spanish and had conversed with Osorio-Lopez in both English and Spanish. In her opinion, based on her communications with Osorio-Lopez, he was able to understand English and could understand an instruction given in English to pass his food tray through the door slot.

[4]The photographs in the record are poor quality black and white photocopies that do not clearly depict the injury.

## II. Standard of Review

Osorio-Lopez challenges the legal sufficiency of the evidence to support his conviction for the offense of aggravated assault with a deadly weapon. "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

4

A person commits the offense of aggravated assault with a deadly weapon if that person uses a deadly weapon when intentionally, knowingly, or recklessly causing bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Supp.), § 22.02(a)(2).[5]

## III. Analysis

Osorio-Lopez's evidentiary challenge is limited to the issue of whether the evidence proved, beyond a reasonable doubt, that the food tray was a deadly weapon. A "deadly weapon" is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury," TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Supp.), or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury," TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Supp.). *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) ("A weapon can be deadly by design or use.") (citing TEX. PENAL CODE ANN. § 1.07(a)(17) (Supp.)). A food tray is not a deadly weapon by design. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A). The food tray could become a deadly weapon, though, if, "in the manner of its use," it "is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

"'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of

---

[5]Paragraph A of the indictment charged Osorio-Lopez with "intentionally, knowingly and recklessly" causing bodily injury to Lower by "throwing a hard food tray" at Lower and "striking him on or about the head or face" and did
> then and there use or exhibit a deadly weapon, namely a food tray, during the commission of the assault, and the defendant did then and there know that [Lower] was . . . a public servant, namely a Jailer with the Upshur County Sheriff's Office, and that [Lower] was then and there lawfully discharging an official duty, namely removing food trays from inmate's jail cells.

Paragraph B of the indictment charges aggravated assault with a deadly weapon on a public servant. The judgment reflects that the offense for which Osorio-Lopez was convicted was aggravated assault with a deadly weapon.

any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). "The State is not required to show that the 'use or intended use causes death or serious bodily injury' but that the 'use or intended use is *capable* of causing death or serious bodily injury.'" *Tucker*, 274 S.W.3d at 691 (quoting *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). Further, the statute "does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). We, therefore, focus our analysis on whether the food tray could cause serious bodily injury and not whether it actually caused serious bodily injury.

We employ the following five-factor test in determining whether the food tray could be considered a deadly weapon: "(1) physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon." *Wilson v. State*, 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.) (citing *Nash v. State*, 175 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, pet. ref'd)); *see Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). "No one factor is determinative, and each case must be examined on its own facts. Either expert testimony or lay testimony may be sufficient to support a finding." *Wilson*, 391 S.W.3d at 137 (citing *English v. State*, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983)). With this in mind, we consider the evidence in the light most favorable to the trial court's judgment.

6

Lower testified that he was standing outside of the door to the separation cell when he was struck in the forehead with the food tray. Although the record does not include evidence of the precise size of the separation cell, the testimony indicates that it was only large enough to house a single inmate. Given that testimony, the jury was entitled to infer that the incident took place in a fairly small area. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (jury entitled to draw reasonable inferences from evidence). Certainly, the two were close enough that Osorio-Lopez was able to throw the food tray with sufficient force at Lower's face to injure him.

There is no evidence of any threatening words from Osorio-Lopez, although the record reflects that his general demeanor was hostile. Osorio-Lopez had been placed in a separation cell because he was aggressive toward others. Carrion testified that the day before the incident, Osorio-Lopez had taken a deodorant stick apart and was filing down the center rod to a point to make a shank. As a result, everything was removed from his cell, and he was given new clothes, a new mattress, and a new blanket. Osorio-Lopez was angry when that happened. Just prior to the incident, Osorio-Lopez had been repeatedly hurling his lunch tray at the door of his cell and refused to place it in the door slot. From that testimony, the jury was free to infer that Osorio-Lopez was aggressive and hostile at the time of the incident. *See id.*

The rather brief description of the food tray indicated that it was constructed from hard, two-inch thick plastic and was "rather heavy." According to Lower, the food tray was capable of being used as a deadly weapon and could cause serious bodily injury. Lieutenant Vanessa Ferguson, the Upshur County Jail administrator, testified, as did Rawls, that the food tray was capable of causing serious bodily injury.

7

Testimony regarding the fourth factor—the food tray's ability to inflict death or serious injury—indicated that it was indeed capable of causing serious bodily injury. Rawls testified that a tray like the one used by Osorio-Lopez thrown hard from eight or nine feet would be capable of knocking a person out if it struck that person's head. He further testified that a tray thrown from that same distance, if it struck the eye or orbital bones, could cause life-long damage.

Evidence of the fifth factor—the manner in which the defendant used the food tray—indicated that Osorio-Lopez hurled the tray at Lower's face with sufficient force to knock him backwards. Lower was taken by ambulance to receive medical care for the injury to his forehead, which had developed into a large knot. Later in the day, both of Lower's eyes turned black, and he suffered from headaches for two weeks.

Considering all the evidence in the light most favorable to the trial court's judgment, a rational jury could have found beyond a reasonable doubt that the food tray, hurled forcefully at Lower's face, was capable of causing "permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," as, for example, if it had struck Lower on the eye or orbital bone. TEX. PENAL CODE ANN. § 1.07(a)(46). We hold that the evidence was legally sufficient to support the jury's verdict as to the deadly-weapon finding.

## IV.  Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:      March 10, 2020
Date Decided:        March 27, 2020

Publish