**Larry Darnell ENGLISH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 65140.**

Court of Criminal Appeals of Texas, En Banc.

March 30, 1983.

Bob Jones, Lubbock, for appellant.

John T. Montford, Dist. Atty., and Jim B. Darnell, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

Appellant was indicted for aggravated robbery and was found guilty by a jury which also found true the indictment paragraphs alleging appellant's two prior felony convictions. Accordingly, punishment was assessed at life imprisonment. V.T.C.A. Penal Code, § 12.42(d).

Appellant challenges the sufficiency of the evidence adduced at trial to prove the allegation in the indictment that the offense involved the exhibition and use of a deadly weapon, "to-wit: a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury." The statutory definition of "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." V.T.C.A. Penal Code, § 1.07(11)(B).

The victim testified that on the date alleged he was a hitchhiking passenger in the front seat of an automobile driven by appellant in Lubbock. A man in the back seat put a knife to the victim's throat and demanded his money. Appellant turned to the victim and said, "You heard him, give it to him."

No knife was introduced at trial. When asked at trial what sort of knife was used, the victim replied as follows:

"I didn't get a good look at it as he put it around my neck, I just looked down and got a glimpse of the blade. It was a small knife, and it had a little bit of a curved tip."

Regarding the relevant remaining part of the transaction, the victim's later trial testimony says enough:

"He had the knife to my throat, and reached over and took my billfold, and, then, he saw that there was only thirty or thirty-five dollars, whatever I had in there, and he said:

'Where is the rest of your money?'

I told him I didn't have anymore. [sic]

He didn't believe me.

So the man driving told him: 'Tell him to take off his clothes.'

And the guy in the back said: 'Take them off.'

And I said: 'What?'

And he took the knife, and pulled back on my neck, and whipped my neck over the back of the seat, and he said: 'Take them off.'

And I was scared he was going to kill me right there. He had that knife poked in my throat.

So I started taking my clothes off.

Q [Prosecutor]: What happened next?

A: He found I had $260 in traveler's checks. The man in the back seat tossed them up to the man in the front seat, and the man in the front seat looked at them and said:

'You told me you only had thirty dollars.' He said: 'I ought to kill you.'"

■ This Court does not require expert testimony in every case to support an implied finding by a jury that a particular weapon is a deadly one.[1] *Denham v. State,* 574 S.W.2d 129 (Tex.Cr.App.1979). Rather, we assay the facts of a particular case to determine whether the manner of the weapon's use and intended use was such as to allow the jury to infer that the weapon was deadly. *Hubbard v. State,* 579 S.W.2d 930 (Tex.Cr.App.1979). Words spoken by the accused during the commission of the offense may be considered in determining whether a knife or other weapon is a deadly one. *Williams v. State,* 575 S.W.2d 30 (Tex. Cr.App.1979).

■ Appellant and his confederate clearly implied by their words and actions that

in the manner of its use or intended use the knife was capable of causing death and serious bodily injury, and the evidence as set out in the victim's testimony quoted above is sufficient to support the jury's implied finding that the knife exhibited or used in the robbery was a deadly weapon. See, e.g., *Rodriguez v. State,* 645 S.W.2d 273 (Tex.Cr.App.1982) (four different knife incidents); *Dominique v. State,* 598 S.W.2d 285 (Tex.Cr.App.1980) (suture scissors placed to throat). Grounds of error three and four are overruled.

■ Appellant also contends, and we agree, that his conviction must be reversed because of the admission at trial of the fruits of an entry by police into appellant's residence to make a warrantless arrest in the absence of consent or exigent circumstances.

The testimony by the State's witnesses at the hearing on appellant's motion to suppress went as follows. At the conclusion of the robbery in this case the victim was forced to exit the auto. On the way out he managed to grab his pants, and as he stood naked in the street he memorized the license number of the car. The victim telephoned police, and when they arrived he gave them the license number and described the vehicle, his assailants, and some of the places he had been taken while in the car.

By driving the victim around town the police were able to locate an apartment complex at which the assailants' car had stopped before the robbery to deposit a female passenger. Another officer located the assailants' vehicle later that same day at that apartment complex. Discovering that the vehicle was registered to a Ralph Evans, officers asked some young persons standing outside at the complex if they knew of Evans' whereabouts. They directed the three officers to an apartment in that complex.

A woman answered the door, and, responding to police questions, said that the

---

**1.** The jury in the present case found appellant guilty "as charged in the indictment," implicitly

finding that the knife was a deadly weapon.

car in question belonged to Evans, but that he was in jail, and that she and her husband had access to the car.[2] The officers asked to see her husband, and she replied that he was asleep in the bedroom, and that she was not going to get him. Hearing a "bumping," "banging" or "rustling" noise from somewhere in the apartment, Officer Griffin entered the apartment, found appellant in the bedroom, asked him to accompany them to the police station, and, upon his refusal, arrested[3] him and took possession of a green bathrobe appellant was wearing. The robe was introduced into evidence at trial and was identified by the victim as the type worn by the assailant who drove the car.

Griffin testified that at the time of entry he had no idea from where in the apartment the "bumping" noise came, nor did he know how many rooms or how many persons were in the apartment. Both of the officers who testified, Griffin and Smith, stated that they had no suspect in mind when the entry occurred, that they were "looking for information," not "looking for a person." On crossexamination at the pretrial hearing, Griffin repeatedly stated that he believed he had probable cause for the warrantless entry, based on the following reasons set forth in his arrest report:

"Q [Defense counsel]: Okay. What were your reasons, please, sir?

A: Okay. I was aware that a crime had been committed.

I was aware that the suspects that had committed the crime had taken grocery items to an apartment in the immediate vicinity there of the Canyon View Apartments.

I was aware that the vehicle used in the robbery was located on the street directly east of those apartments.

I was aware that the Defendant's wife had already admitted having keys to the vehicle, and that the owner was in jail.

I was aware that the Defendant's wife had—seemed to be very nervous because of our presence there.

I was aware that she had advised me that her husband was asleep, and, yet, I could hear obvious noises back in another room.

Those are some of the reasons why I believed there was someone in there.

\* \* \* \* \* \*

Q: Based on those reasons, Officer Griffin, you felt that you had probable cause to walk into that house without any type of a warrant, is that correct?

A: Yes, sir."

It was only during the final question put to the officer by the prosecutor during redirect examination that the specter of an escaping suspect arose:

"Q: Did you have reason at the time, in your own mind, and testify from what was in your mind at the time, to think a person might be trying to escape, when you heard that noise?

A: Yes, sir, I definitely did."

In response, defense counsel briefly questioned the officer:

"Q: What reason did you have to believe that somebody was trying to escape?

A: Because of the noise I heard in the back of the house.

Q: Well, you said it sounded like a bump?

A: Several things went through my mind, either that he might have been trying to get out a window, or that somebody was getting a gun out of a closet. *I didn't know what was going on, and I wanted to find out.*"[4]

The testimony of the other officer, Smith, was similar:

---

2. Contrary to the assertion in the State's brief, the testimony referred to does not indicate that the woman said appellant had been driving the car *that morning.*

3. The two officers who testified about the apartment scene claimed that they merely took appellant into "custody" and did not arrest him

until later at the station. The State's brief refers to their actions at the apartment as an "arrest."

4. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

"A: After we heard the noise, Officer Griffin went on and entered the house *to see what the noise was in the back of the room.* We were aware that a felony had been committed, and several points of the evidence did lead towards this apartment, *and we did go in for our own safety[5] and proceed to check out what was going on in the back of the room.* .

Q [Prosecutor]: All right. State whether or not you had any thought that the suspect might escape?

A: Yes, we did."

Smith further testified that the three officers could have "staked out" the apartment for the two or three hours that it would have taken to secure a warrant, but he professed not to know the number of exits or whether a person would be able to leave the apartment unnoticed despite the presence of the officers.[6]

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980), *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In *Duncan v. State,* 639 S.W.2d 314 (Tex.Cr. App.1982) *Payton* was held to apply retroactively.

The State's argument that the entry was consensual is without merit because no hint of consent by appellant or his wife appears in the record. Neither does the record support the State's only other contention, that there existed exigent circumstances justifying the warrantless entry and arrest under Article 14.04, V.A.C.C.P. The statute reads in its entirety as follows:

"Where it is shown by *satisfactory proof* to a peace officer, upon the representation of a credible person, that a felony has been committed, and *that the offender is about to escape,* so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

The officers testified that at the time of the entry appellant was not a suspect, that they sought only to obtain information from him, not to arrest him. They had descriptions of the offenders, but they had not yet seen appellant. Their testimony compels the conclusion that at the time of the entry the officers did not have "satisfactory proof" that appellant was "the offender."

The testimony of Officer Smith that the officers could have obtained a warrant in two or three hours, meanwhile "staking out" the apartment, suggests that the State has failed to satisfy the requirement of the statute that there be "no time to procure a warrant." Furthermore, the prospect of an impending "escape" by the nonsuspect appellant appears nowhere in Officer Griffin's primary list of reasons for the warrantless entry and arises only in response to the prosecutor's leading questions. The "bumping," "banging" or "rustling" noise emanating from somewhere in the apartment cannot in this case be said to constitute "satisfactory proof" of an offender's impending escape. This is especially true in view of the facts that appellant was not then a suspect, that the officers did not know how many other persons were in the apartment (and might be "bumping" around), and that the officers did not know from where in the apartment the noise came (whether from the bedroom where his wife said he was sleeping or from elsewhere).

As noted by this Court in *Duncan v. State,* supra, at 316, the Supreme Court in *Steagald v. United States,* supra, has "succinctly stated the law on this matter:"

"The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circumstances. Except in such special situations, we have consistently held that the

---

5. Yet the testimony of the officers was that no officer ever unholstered a gun.

6. Smith did not know whether the apartment had a back door. Appellant's wife testified that it did not.

entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. [Citations omitted] Thus, as we recently observed, '[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" [Citations omitted]

The facts of this case disclose no exigent circumstances to justify the warrantless entry and arrest.[7] The entry and arrest were illegal, and the admission at trial of the bathrobe, the fruit of that illegal search and seizure, was error.

■ However, the State contends that the victim's identification of appellant in court was so positive and so unwavering that the introduction of the robe was harmless error. The test for harmless constitutional error is not whether a conviction could have been obtained without the improperly admitted evidence, but whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ At trial the victim testified that the assailant who drove the car wore nothing but a green bathrobe, and he identified *appellant's robe as the same robe or one exactly like it.* The police officers identified the robe as the only thing appellant was wearing when they illegally entered his residence and discovered him in the bedroom. Especially in light of these facts we conclude that there exists at least a reasonable possibility that the error in overruling appellant's motion to suppress and in admitting the robe into evidence contributed to appellant's conviction.

7. The State's offhand statement that the "bumping" noise made the officers fear for their own safety is not worthy of serious comment by this Court, except for us to observe that Article 14.04, supra, relied upon by the State, does not authorize a warrantless entry of a home for that reason. Compare *Bolden v.*

The judgment of conviction is reversed and the cause remanded.

*State,* 634 S.W.2d 710 (Tex.Cr.App.1982); *Janicek v. State,* 634 S.W.2d 687 (Tex.Cr.App. 1982). (Although not covered by Article 14.04, supra, emergency search of home may be justified when police reasonably fear for safety of occupant.)