**Affirmed and Memorandum Opinion filed July 10, 2012**



In The

# Fourteenth Court of Appeals

## NO. 14-11-00864-CR

**MATTHEW LESLIE HULL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 10Th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10CR3636**

## M E M O R A N D U M   O P I N I O N

Matthew Leslie Hull appeals his conviction for aggravated robbery. Appellant contends that the evidence is insufficient to support his conviction because there is insufficient evidence to establish that he used a deadly weapon during the robbery. We affirm.

### Background

Appellant was indicted for aggravated robbery on February 10, 2011. A two-day jury trial was held on August 24, 2011.

At trial, complainant Jeremie Cummins testified that he was selling drugs in Galveston, Texas, on the night of November 14, 2010. He testified that a woman he recognized as a customer pulled up in a black Ford Explorer. He entered the vehicle intending to sell her drugs at approximately 10:30–11:00 p.m. The female drove the vehicle around the corner, and complainant waited to be paid. Appellant, who was hiding in the back seat, then attacked complainant by striking him repeatedly in the head with an unknown object. Complainant testified that the attack was as if he "met the devil" and he felt like he was "about to die." Complainant testified that the first blow of the "vicious attack . . . literally paralyzed [him] from [the] neck down."

Once complainant regained control of his body, he turned to face appellant and began holding him off. He told appellant: "Man, don't kill me, man. This is all I got." While struggling with appellant, complainant held appellant's arm and "the object" that appellant had in his hands. Complainant explained that he did not see what the object was. Complainant testified that during the struggle the female driver also began to attack him by striking him in the head. According to complainant, she struck him with another object that complainant described as "something heavy and blunt" with "force behind it" that "busted [his] head open." The female driver reached into complainant's pockets and took $75 in cash and a $20 crack rock. Appellant then let complainant get out of the vehicle, and complainant made his way to the store where he fell and laid down on the sidewalk.

Officer Brandon Kiamar of the Galveston Police Department testified that he was called to the store. He observed complainant lying face-down with his head covered in blood. He recognized complainant because they went to school together and he knew complainant was a local drug dealer. According to Kiamar, complainant had lacerations on the back of his head — specifically on the right side of his ear and on the backside of his head. Complainant had several open gashes and "what looked like a hole in [his] head." Kiamar testified that complainant was conscious and did not seem disoriented.

Complainant testified that he told Kiamar that he had been attacked by three white

2

male skinheads, which he later admitted was a lie. According to complainant, he lied because he planned to kill his attackers and did not want to be linked to the crime. EMS arrived and took complainant to the emergency room where he got 21 staples, 11 stitches, an MRI, and a CT scan.

Medical records showed that complainant suffered (1) a one centimeter laceration to his left forehead; (2) a twelve centimeter laceration on his right scalp; (3) a two centimeter laceration on his right occiput; (4) a two centimeter laceration on his left occiput; and (5) swelling on his scalp, occiput, and right parietal. Complainant did not have any damage to his skull but had a chipped neck bone — his radiology results showed subgaleal hematomas on his head but no abnormalities or fractures. According to complainant, the doctors wanted him to stay at the hospital for further testing, but he checked himself out that night.

Complainant testified that his brother convinced him to go to the police a few days later in order to tell the truth about what had happened because his brother did not want complainant to retaliate and get into trouble. Complainant testified that he met with Sergeant Gilbert Gomez and told him the truth about what had happened and showed him where appellant lived. Gomez testified that he questioned appellant and the female driver and briefly looked at the Ford Explorer. He also called for another officer to take pictures of appellant, the female, and the vehicle. Gomez noticed that the inside of the passenger window on the vehicle had a red smudge. He asked appellant about it, but appellant claimed he did not know what it was. Gomez did not see any blood on the seats but noticed they had seat covers.

Gomez showed complainant photo line-ups, and complainant identified appellant and the female driver as his attackers. Gomez then obtained arrest warrants for appellant and the female. Appellant was arrested on November 30, 2010. Gomez never was able to identify or locate any weapons used in the robbery.

A jury found appellant guilty of aggravated robbery and sentenced him to 20 years' confinement. Appellant filed a timely notice of appeal.

3

**Analysis**

In two issues, appellant argues that the evidence is legally and factually insufficient to support his conviction for aggravated robbery because the State failed to establish that he used or exhibited a deadly weapon during the commission of the offense.

## I. Standard of Review and Applicable Law

We address appellant's sufficiency challenges under a single standard for evaluating legal sufficiency of the evidence to support a finding required to be proven beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 913–15 (Tex. Crim. App. 2010) (Cochran, J., concurring) (concluding that a separate factual sufficiency standard no longer applies in criminal cases). When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. Id. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits aggravated robbery if he commits robbery and he uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03 (Vernon 2011). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 29.02 (Vernon 2011). To prove that appellant's weapon was deadly, the State must prove that the object (1) was manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

4

(2) is capable of causing death or serious bodily injury. *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see* Tex. Penal Code Ann. § 1.07 (Vernon 2011).

To determine whether the object appellant used to attack complainant was a deadly weapon under the second definition, "capability" must be evaluated in light of the facts that actually existed at the time of the offense. *Romero*, 331 S.W.3d at 83 (citing *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986)). Factors that a jury may consider in determining whether an object is a deadly weapon under this definition include (1) words of the accused; (2) the intended use of the weapon; (3) the size and shape of the weapon; (4) testimony by the victim that he feared death or serious bodily injury; (5) the severity of any wounds inflicted; (6) the manner in which the assailant allegedly used the object; (7) physical proximity of the parties; and (8) testimony as to the weapon's potential for causing death or serious bodily injury. *Id.* (citing *Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991); *Brown*, 716 S.W.2d at 946–47).

Intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker. *Romero*, 331 S.W.3d at 82. The nature of any inflicted wounds is a factor to be considered, but wounds are not a prerequisite to a deadly weapon finding. *Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *English v. State*, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983)). Wounds in "particularly vulnerable" parts of the body may provide ample evidence from which the jury may draw the inference that the manner of the assailant's use of an object rendered it a deadly weapon. *Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008); *Morales v. State*, 633 S.W.2d 866, 868–69 (Tex. Crim. App. [Panel Op.] 1982). Photographs of wounds admitted into evidence have been shown to provide sufficient evidence for a jury to find that a weapon was used in a manner making it a deadly weapon. *See Morales*, 633 S.W.2d at 868–69. If a wound could have easily caused death or serious bodily injury, but the victim was fortunate that it did not, it may

still be found that the weapon that caused the wound was capable, in its manner of use, of causing serious bodily injury. *Tucker*, 274 S.W.3d at 691–92.

It is not necessary that an object be introduced into evidence in order for there to be sufficient evidence to establish it as a deadly weapon. *Romero*, 331 S.W.3d at 84. It also is not necessary that expert testimony be offered — lay testimony from the victim alone may be sufficient evidence. *Tucker*, 274 S.W.3d at 692; *English*, 647 S.W.2d at 669; *Morales*, 633 S.W.2d at 868; *Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978); *Romero*, 331 S.W.3d at 84. The jury needs sufficient evidence to draw an inference that the manner of the appellant's intended use of the object was capable of causing death or serious bodily injury. *Morales*, 633 S.W.2d at 868–69; *Romero*, 331 S.W.3d at 83.

## II.   Deadly Weapon

Appellant argues that the evidence was insufficient to support a finding that the "unknown object" used in the robbery of complainant constituted a deadly weapon. No evidence was offered to corroborate complainant's testimony that he feared for his life. There is no evidence as to the shape, size, or identity of the object; and the object never was admitted into evidence. Appellant contends that (1) he did not threaten the complainant; (2) complainant suffered only "superficial wounds" that could "be explained by a nasty fistfight;" and (3) he allowed complainant to escape once the robbery was complete. Considering the evidence presented in this case, we conclude there is sufficient evidence to support appellant's conviction for aggravated robbery with a deadly weapon.

Appellant was in close physical proximity to complainant when the robbery and attack occurred. Appellant was hiding in the back seat of the vehicle while complainant sat in the front seat, and appellant struck complainant's head from this position. The physical proximity of the parties is a factor for determining whether the object is a deadly weapon. *Brown*, 716 S.W.2d at 946; *Romero*, 331 S.W.3d at 83; *see also English*, 647 S.W.2d at 668–69 (victim's testimony that he was in the front seat of a car while his

6

assailant, who was hiding in the back seat, held a knife to the victim's throat and demanded money was sufficient to establish the knife as a deadly weapon through the manner of its use when no knife was introduced into evidence and the victim could only give a general description of it). Appellant's position, closely behind complainant while physically attacking him, supports a finding that the object used in the attack was a deadly weapon. *See English*, 647 S.W.2d at 668–69; *Herbert v. State*, 631 S.W.2d 585, 587 (Tex. App.—El Paso 1982, no pet.).

Complainant testified that he felt like he was "about to die" during the "vicious attack" and he pleaded with appellant: "Man, don't kill me, man. This is all I got." That complainant feared for his life during the attack shows that the manner of appellant's use of the object was capable of inflicting death or serious bodily injury and, therefore, supports a finding that it was a deadly weapon. *See Hammons v. State*, 856 S.W.2d 797, 800–801 (Tex. App.—Fort Worth 1993, pet. ref'd).

When Kiamar found complainant, he was lying face down and his head was "covered in blood;" he had numerous cuts and "what looked like a hole in [his] head." Complainant suffered multiple lacerations on his head (ranging from one to twelve centimeters each); swelling around his head; and subgaleal hematomas. Evidence of these wounds was provided to the jury through pictures of complainant at the hospital showing that he was in a neck brace and still bleeding from the lacerations on his head. The pictures show lacerations going from the lower-back side of complainant's head to just above his ear; these lacerations are especially deep and wide at certain points. Complainant's injuries required CT and MRI scans as well as 11 stitches and 21 staples. Complainant testified that the doctors wanted him to stay in the hospital for further testing.

Attacks to certain "particularly vulnerable" parts of the body carry the potential for resulting in a serious bodily injury or death. *Tucker*, 274 S.W.3d at 692 (wounds to the back of the neck and to the arm); *see Morales*, 633 S.W.2d at 868 (wound from "just underneath the complainant's earlobe across her cheek to the corner of her mouth"); *see*

*also Bailey v. State*, No. 10-07-00381-CR, 2008 WL 5246683, at \*4–5 (Tex. App.—Waco Dec. 17, 2008, pet. ref'd) (mem. op., not designated for publication) (wound in back of head after being hit with skillet). Appellant "viciously" attacked complainant's head repeatedly at close range, and his attacks inflicted wounds serious enough to require 11 stitches, 21 staples, and medical testing. The first blow of this "vicious attack . . . literally paralyzed [complainant] from the neck down." Complainant testified that he was conscious but that he "could not move" while appellant struck him repeatedly in the back of his head. It does not take expert testimony to recognize that an attack causing these wounds to a "particularly vulnerable" part of complainant's body, his head, could have easily placed complainant in danger of suffering death or serious bodily harm. *See Tucker*, 274 S.W.3d at 692. Even though complainant was "fortunate that [he] did not receive [] a serious injury, the weapon that caused [his] wound[s] was *capable*, in its manner of use, of causing serious bodily injury." *See id.* (emphasis in original)*; Bailey*, 2008 WL 5246683, at \*5.

We reject appellant's contention that he did not have the intent to cause death or serious bodily harm to complainant because complainant "suffered only superficial wounds" and appellant told complainant he could exit the vehicle after the robbery. Appellant did not merely suffer "superficial wounds." Further, it is not necessary that appellant actually intended to cause death or serious bodily injury; an object is a deadly weapon if appellant intends a use of the object in which it would be capable of causing death or serious bodily injury. *See Bailey v. State*, 38 S.W.3d 157, 159 (Tex. Crim. App. 2001). Appellant's conduct during the robbery consisted of hiding in the backseat and then launching a "vicious attack" on complainant by repeatedly striking him in an especially vulnerable part of his body — his head. Appellant testified that "the first blow . . . literally paralyzed [him] from [the] neck down," and appellant's attack was "repetitive" and continued "constantly and constantly." Complainant testified that he "was not unconscious, but [he] could not move." This conduct shows appellant's intended use of his weapon and that it was capable of causing death or serious bodily

injury. *See Romero*, 331 S.W.3d at 83.

We conclude that, when viewed in the light most favorable to the jury's guilty verdict, the evidence sufficiently supports the jury's finding that the weapon used by appellant was deadly. *See Brooks*, 323 S.W.3d at 902–03 (plurality opinion); *id*. at 913–15 (Cochran, J., concurring).

## Conclusion

We affirm the trial court's judgment.

/s/    William J. Boyce
Justice

Panel consists of Justices Boyce, Christopher and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).