

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00059-CR

A.J. MCDONALD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 276th District Court
Marion County, Texas
Trial Court No. F15351

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Following a bench trial, the trial court found A.J. McDonald guilty of aggravated assault with a deadly weapon and sentenced him to fifteen years' confinement in prison. In his sole point of error on appeal, McDonald contends that the evidence was legally insufficient to support the trial court's finding that he used or exhibited a deadly weapon during the assault. Because we find that the State presented sufficient evidence to show that a deadly weapon was used or exhibited during the assault, we affirm the judgment of the trial court.

## I. Factual Background

On September 8, 2018, Dustin Hayes, an investigator with the Jefferson Police Department, met with Shiree Hicks after Hicks contacted the department to complain about an encounter she had had with McDonald. According to Hayes, Hicks was "distraught and upset" when he spoke with her. Hicks told Hayes that McDonald had threatened her with a box cutter and that she had been afraid for her life.

Hicks testified that she had dated McDonald for a short period of time but that she stopped seeing him because of his "short temper." In addition to their brief dating relationship, McDonald did handyman work in one of Hicks's homes. Around 10:30 p.m. on September 8, 2018, Hicks traveled to Jefferson, Texas, to pick up McDonald. McDonald had planned to spend the night at Hicks's house and then do some repair work for her the next day. According to Hicks, when she picked up McDonald, "[he] was out if it, like going off. And [she] didn't want to ride that night with him." According to Hicks, when McDonald got into her vehicle, [he] turned to [her] and looked at [her] and said, 'Bitch, drive.'" Hicks stated that, before she had

2

time to start driving, McDonald put a flashlight in her face. Hicks stated to McDonald, "Get that damn flashlight out of my face. And that's when he slammed the thing down." McDonald then told Hicks that he would break the vehicle's window if she did not start driving. Hicks said that McDonald was acting "like a bully" and "being crazy." Once they were on the road, McDonald grabbed a large piece of wood that had been left in Hick's vehicle and "slammed it down."

Hicks said she had seen McDonald "go off" before, but that "[she] had never seen him like that ever, ever." Based on his erratic behavior, Hicks believed McDonald "was on something." But, when Hicks made an attempt to calm him, he pulled out a box cutter with an open blade. According to Hicks, McDonald said, "Bitch, if the police stop you while we [are] driving up this road, you'll be dead before they get to you. Or you call 9-1-1, you going to be dead before they get to you." Referring to the box cutter, Hicks said, "All I know is when you this close to my face, you this close, as close as from like -- you know, like I couldn't do this (indicating) without getting cut." Hicks continued, "I had no defense, I had no taser, I had no gun. All I had was an angry man in my car threatening to cut me. Threatening to cut me. He was going to cut me."

A short time later, McDonald "hollered" at Hicks to take him to buy a lottery ticket at the convenience store. Hicks described McDonald's directive as her "saving grace," because as soon as he exited her vehicle and went inside the store to buy the lottery ticket, Hicks "put [her] truck in gear, and [she] got the hell out of there."[1] According to Hicks, McDonald threatened to kill her, and she had no doubt that he would have killed her had she not been able to escape.

---

[1]McDonald admitted that he had to pay someone to take him home from the convenience store.

After the incident, Hicks immediately contacted the police, and officers escorted her to the local women's shelter. Hicks said that she was so afraid of McDonald that she did not go back to her own home for almost two years.

On cross-examination, Hicks conceded that (1) she previously had had a fist fight with McDonald; (2) there had been a "weed eater incident"; (3) McDonald told her that he had stabbed someone twenty-five times; and, (4) during one fight, he picked up a table and threw it down. Even after all of those events, Hicks continued to use McDonald as a handyman.

McDonald testified that he did not threaten Hicks with a flashlight and that, although he may have had a box cutter—"but he doubt[ed] it"—he did not threaten her with it.[2] According to McDonald, he did not cuss or fuss at Hicks on the night of the incident, and he was not "even high" or "buzzed." McDonald said that Hicks kept a box cutter in her vehicle in the console, "so if [he] used one, [he] got it there." McDonald conceded that he pled to a charge of aggravated assault with a deadly weapon in 2010 and that the court placed him on deferred adjudication community supervision. However, the court revoked his community supervision and found him guilty of the charge in 2016.[3] McDonald denied that he used illegal drugs, and "it surprised [him] when [Hicks] said she knew [he] was on something." He also explained that the story that he stabbed someone twenty-five times was "just a myth." In reality, he had stabbed the person only seven times, and he did so in self-defense. According to McDonald, he was acquitted of the

---

[2]Later, McDonald conceded that Hicks did not make up all of her testimony, but he stated, "She made a lot of it up." He continued to adamantly deny that he threatened her.

[3]McDonald explained that he was charged with the offense after cutting his brother with a fingernail file during a game of dominos.

charge. McDonald conceded that he had been involved in many altercations with family members and people that he cared about.

## II. Discussion

The State's indictment against McDonald charged that he committed aggravated assault with a deadly weapon on or about September 8, 2018, when he "did then and there intentionally or knowingly threaten another, namely SHIREE HICKS, with imminent bodily injury and [McDonald] did then and there use or exhibit a deadly weapon, to-wit: a box-cutter, during the commission of said assault."[4] McDonald contends on appeal that the deadly-weapon finding was not supported by sufficient evidence. We disagree.

A "deadly weapon" is defined as:

(A)     a firearm manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or

(B)     anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(17). McDonald argues that the trial court found him guilty based on the fact that he was in possession of "an object" that caused Hicks to be in fear for her life. McDonald greatly emphasizes the fact that Hicks continued to use his services as a handyman even after she had had multiple run-ins with him and even though he had told her he had stabbed someone twenty-five times. He also points out that there was no expert testimony as to the box cutter's "make or design or manner of use save and except a general description."

---

[4]Assault is defined as "intentionally or knowingly threaten[ing] another with imminent bodily injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (Supp.). One commits the offense of aggravated assault if the person commits an assault and (1) causes serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a) (Supp.).

A box cutter is not a deadly weapon per se.  *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *Lafleur v. State*, 106 S.W.3d 91, 95 (Tex. Crim. App. 2003); *Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex. Crim. App. 1991).  Consequently, the State was required to prove that the box cutter was, in the manner of its use or intended use, capable of causing death or serious bodily injury.  *See* TEX. PENAL CODE ANN. § 1.07(a)(17).  Some of the factors to be considered in determining whether the box cutter qualified as a deadly weapon are:  (1) the size, shape, and sharpness of the knife; (2) the manner in which the person used the weapon; (3) testimony concerning the knife's threatening capabilities; and (4) the words spoken by the individual who had the weapon.  *See Thomas*, 821 S.W.2d at 619.  Further, expert testimony is not required to prove that a weapon is deadly; both expert testimony and lay testimony may be sufficient to establish that a weapon is deadly.  *English v. State*, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983).

Here, there was no specific description of the box cutter, and the actual box cutter was not admitted into evidence.  Likewise, the State did not present an expert witness to prove that the box cutter was a deadly weapon.  However, it is reasonable to believe that the trial court was aware of the simple components of a box cutter, with the most important component being a razor that is sharp enough to cut through cardboard boxes.  Moreover, Hicks explained that the box cutter's blade was in the unlocked position, meaning the blade was ready to be used by McDonald.  Further, McDonald was acting volatile in an extremely confined area of the front seat of Hick's vehicle, holding the box cutter so close to her that, if she moved, she would have been injured.  Hicks did not have to imagine what McDonald was planning to do with the box

cutter because he told her that, if she tried to help herself by contacting 9-1-1 or if the police stopped her for any reason, he would kill her. Finally, we find Hicks's knowledge of McDonald's prior behavior, which included, among other things, allegedly stabbing a person twenty-five times, to be additional evidence that he was ready and able to use the box cutter as a deadly weapon against Hicks.

The trial court, as the fact-finder in a non-jury trial, is the sole judge of the weight of the evidence and the credibility of the testimony. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The trial court is free to believe all, none, or any part of the witnesses' testimony, and an appellate court is not authorized to disagree with the trial court's findings unless necessary to prevent "a manifest injustice." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). Apparently, the trial court found Hicks's testimony to be quite credible. In 1915, the Texas Court of Criminal Appeals explained in *Acosta v. State*, 179 S.W. 870, 871 (Tex. Crim. App. 1915), "that a razor is not per se a deadly weapon." The court continued, "We are inclined to believe that all mankind know that death can be inflicted by a razor in the hands of a grown man." *Id.* Under the present circumstances, the same would be true of a box cutter.

Accordingly, we overrule McDonald's sole point of error.

### III.    Conclusion

We affirm the judgment of the trial court.

Ralph K. Burgess
Justice

Date Submitted:       December 7, 2021
Date Decided:         January 4, 2022

Do Not Publish

8