**Opinion filed July 13, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00111-CR

_____

## ROBERTO MAURO MORALES, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CR55044**

## M E M O R A N D U M   O P I N I O N

In a two-count indictment, Appellant, Roberto Mauro Morales, Jr., was charged with the offenses of aggravated kidnapping (Count One) and aggravated assault with a deadly weapon, to-wit: by using or exhibiting a tire iron, crowbar, or a piece of metal, during the commission of the assault (Count Two). TEX. PENAL CODE ANN. §§ 20.04(b), 22.02(a)(2) (West 2019 & Supp. 2022). The jury acquitted Appellant of aggravated kidnapping but found him guilty of aggravated assault with

a deadly weapon. Based on Appellant's plea of "true" to an enhancement allegation the trial court found the enhancement to be true and, upon Appellant's election, assessed Appellant's punishment at fifteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In Appellant's sole issue on appeal, he contends that the evidence was legally insufficient to support the jury's deadly weapon finding. We affirm.

## I. *Factual Background*

On the night of February 6, 2020, Appellant, his girlfriend Victoria Galindo, and Omar Ayala were at the Scottish Delight Hotel partying, consuming alcohol, and using drugs. Galindo and Appellant had argued after Appellant bragged about having stolen two guns from John Michael Ruiz. The following day, Galindo went to an RV park to retrieve her purse from Ayala's vehicle. Upon her arrival there, Galindo noticed that Appellant was passed out; she then took the stolen guns and left while Appellant was sleeping because she and Ayala did not "want [anything] to happen."

Later that afternoon, Galindo was stepping into an RV in the same RV park when Appellant approached her; he was slurring his words. Galindo testified that she was halfway into the RV when Appellant grabbed the back of her shirt and pulled her toward him. Appellant then grabbed her hair and a scuffle ensued; Appellant tugged at Galindo as she tried to get away. During the scuffle, Appellant yelled at Galindo and accused her of taking the guns. When Galindo pulled away from him, Appellant grabbed a crowbar and struck Galindo twice on her left leg, just above the knee.

The owner of the RV where the scuffle occurred, Samuel Allen, testified that Appellant forcibly struck Galindo at least once with an object that he believed was a tire iron. After she was struck, Galindo laid inside Allen's RV as Allen attempted to diffuse the situation and calm Appellant down. Galindo testified that following

the scuffle with Appellant, her head was "spinning," she could not move or talk, and she was disoriented for approximately thirty minutes.

Appellant left the scene but returned to the RV park about an hour later with Ayala and others. According to Galindo, they all went with her to Ivan Alcala's home, the father of her children, because Appellant believed that Alcala had been involved in taking the guns from Appellant. After arriving at Alcala's house, a fight broke out between Alcala and Ayala and a 9-1-1 call was made. Officer Bailey Mims of the Midland Police Department responded to the 9-1-1 call and requested emergency medical assistance for Galindo after she had observed that Galindo was injured (her left leg was swollen) and limping.

## II. *Sufficiency of the Evidence*

### A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial and defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to

draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances may be sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

B. *Analysis – Deadly Weapon Finding*

Count Two of the indictment alleges that Appellant intentionally, knowingly, or recklessly caused bodily injury to Galindo by hitting and striking her on the leg with a deadly weapon, to-wit: a tire iron, crowbar, or a piece of metal, and that Appellant used or exhibited that deadly weapon during the commission of the assault. The Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury."

4

PENAL § 1.07(a)(17)(B) (West 2021) (emphasis added). Here, whether the evidence was sufficient to support Appellant's conviction for the offense of aggravated assault with a deadly weapon turn on whether the jury could have rationally concluded that Appellant used or exhibited a crowbar or a tire iron as he assaulted Galindo. *Flores v. State*, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (citing PENAL § 29.03(a)(2)).

Appellant argues that the evidence was insufficient to support the jury's finding that a *crowbar* constituted a deadly weapon. Specifically, Appellant claims that the evidence does not support the jury's deadly weapon finding because (1) there is no evidence that Galindo received ongoing medical treatment or that she continued to experience any symptoms or lasting effects from the assault that are necessary to prove that one has suffered serious bodily injury, and (2) the crowbar was not admitted as an exhibit at trial, there is no description of the crowbar's size or dimensions, and thus no proof that its use was capable of causing serious bodily injury to another. We disagree.

Contrary to Appellant's argument, for the evidence to support a deadly weapon finding, it is not necessary that a defendant must actually inflict any pain or harm or injury upon the victim with an object for the object to be considered "deadly" in its use or intended use. *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017); *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986). Nor must the actor, in using such object, intend to cause death or serious bodily injury to the victim. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Further, "although [the] admission of descriptions of the [weapon] by witnesses and [the] introduction of the [weapon] into evidence are an aid to the jury in its determination of the [weapon's] deadly character, evidence has been held [to be] sufficient where no [weapon] was introduced or clearly seen by the witnesses."

5

*Brown*, 716 S.W.2d at 946 (citing *English v. State*, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983)).

We use a two-part test to determine whether the element of the "use or exhibition" of a deadly weapon is satisfied. *See Flores*, 620 S.W.3d at 158 (citing *McCain*, 22 S.W.3d at 502). First, we must decide "whether the object 'could be a deadly weapon *under the facts of the case*'" based upon the defendant's "particular manner of use or intended use of the object." *Id.* at 158−59 (quoting *McCain*, 22 S.W.3d at 502). Second, we must decide whether the object was "'used or exhibited' . . . during the criminal transaction to facilitate [the] commission of the crime." *Johnson*, 509 S.W.3d at 324 (quoting *McCain*, 22 S.W.3d at 503). To determine whether an object constitutes a deadly weapon, a factfinder may consider (1) the proximity of the weapon to the victim; (2) the nature of any wounds sustained by the victim; (3) the words, if any, spoken by the defendant; (4) the weapon's size and shape; (5) the weapon's ability to cause serious bodily injury or death; (6) the manner in which the defendant used the weapon; and (7) the testimony, if any, that the victim feared she would suffer serious bodily injury or death. *See Babcock v. State*, 501 S.W.3d 651, 655 (Tex. App.—Eastland 2016, pet. ref'd); *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd); *see also Brickley v. State*, 623 S.W.3d 68, 76 (Tex. App.—Austin 2021, pet. ref'd); *Leal v. State*, 527 S.W.3d 345, 348 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.); *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Because we consider all the facts and circumstances surrounding Appellant's use or exhibition of the crowbar during his assault upon Galindo, we now turn to the above factors that the jury could have considered in this case in making the deadly weapon finding. *See Babcock*, 501 S.W.3d at 655.

## 1. *The Proximity of the Weapon to Galindo*

Galindo and Allen testified that Appellant struck Galindo on her left leg with either a crowbar or a tire iron; striking Galindo, irrespective of the object that was used, caused contusions to Galindo's left leg. Further, Appellant was holding onto Galindo as he struck her with the crowbar. As such, there was minimal, if any, distance between Galindo and the crowbar during the assault. This factor weighs in favor of the jury's finding that the crowbar constituted a deadly weapon.

## 2. *The Nature of the Wounds Sustained by Galindo*

Appellant struck Galindo twice on her left leg with a crowbar which resulted in bruising and swelling to her left leg and knee. According to medical records and photographs that were admitted at trial, the trauma caused a softball-sized hematoma to develop on Galindo's left leg. Bruises developed above and below her left knee. Galindo also testified that after the assault, she was disoriented for approximately thirty minutes and temporarily unable to move. Further, Officer Mims observed Galindo's injuries and requested emergency medical assistance for her. Based on Appellant's use or intended use of the crowbar, the wounds and other injuries that Galindo sustained to her left leg demonstrate that the crowbar was certainly *capable* of causing serious bodily injury or death during the commission of Appellant's assault upon her. This factor weighs in favor of the jury's finding that the crowbar constituted a deadly weapon.

## 3. *Words Spoken by Appellant*

According to Galindo, Appellant was slurring his words as he approached her at the RV park. However, when she attempted to talk to Appellant about the stolen guns, he became enraged and attacked her. Allen also attempted to calm Appellant. Appellant's actions are consistent with the jury's finding that the crowbar constituted a deadly weapon.

#### 4. *The Size and Shape of the Weapon*

Although the crowbar was not offered or admitted as an exhibit, Sergeant Rosemary Sharp of the Midland Police Department testified that Galindo's injuries were consistent with being struck by a metal object. Officer Mims also testified that, although the crowbar was not found, it is common in criminal cases to not have the weapon that is used available for trial, because "[defendants] typically bring [the weapon] with them and then take it when they leave." Although we cannot ascertain the size of the crowbar based on its unavailability, the crowbar's impact left a five-inch oblong bruise above Galindo's left knee and a one-inch bruise below her left knee. This factor weighs in favor of the jury's finding that the crowbar constituted a deadly weapon.

#### 5. *The Weapon's Ability to Cause Serious Bodily Injury or Death*

Galindo sustained injuries that required that she be transported to a hospital and receive emergency medical treatment. Moreover, the injuries inflicted by the crowbar were noticeable and she experienced the effects of these injuries for quite some time. Here, the manner in which Appellant used the crowbar during the assault had the ability to and was *capable* of causing serious bodily injury or death. *See Flores*, 620 S.W.3d at 158. This was not a circumstance in which Appellant's use of the crowbar might only cause such harm in a hypothetical sense. This factor weighs in favor of the jury's finding that the crowbar constituted a deadly weapon.

#### 6. *The Manner in Which Appellant Used the Crowbar*

As stated above, Appellant used the crowbar and struck Galindo with it during his violent attack upon her in which he also grabbed her hair and ripped her shirt. As stated above, the manner in which Appellant used the crowbar to assault and injure Galindo is consistent with the jury's finding that the crowbar constituted a deadly weapon.

8

### 7. *Testimony that Galindo Feared Serious Bodily Injury or Death*

Galindo expressed fear as Appellant attacked her. She was disoriented and unable to move after the attack. Allen also observed Galindo's apprehension as Appellant attacked her. At the hospital, when asked by Officer Mims whether Galindo feared for her life during the attack, she answered, "Honestly, yes." This evidence that Galindo feared serious bodily injury or death during the assault weighs in favor of the jury's finding that the crowbar constituted a deadly weapon.

We have reviewed the evidence in the light most favorable to the jury's verdict, as we must. Considering the totality of the above factors, we conclude that the State adduced sufficient evidence from which a rational jury could have found beyond a reasonable doubt that the crowbar constituted a deadly weapon. The crowbar, in the manner in which Appellant used or intended to use it, was *capable* of causing serious bodily injury or death, and Appellant used the crowbar in such a manner during the commission of his assault upon Galindo.

As we have said, to constitute a deadly weapon, the object used need only be *capable* of or have the *ability* to cause serious bodily injury or death to the victim; there is no requirement that serious bodily injury or death *must* result from the object's use or intended use. Such is the case here. *See Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. [Panel Op.] 1980) (suture scissors held to the victim's neck and slashing motions with the scissors were sufficient to sustain a deadly weapon finding); *Anderson v. State*, No. 11-19-00235-CR, 2021 WL 2836738, at *3 (Tex. App.—Eastland July 8, 2021, no pet.) (mem. op., not designated for publication) (pipe wrench held to be a deadly weapon); *Babcock*, 501 S.W.3d at 655 (threats and gestures while holding a tree branch was sufficient to sustain a deadly weapon finding); *Samford v. State*, No. 11-15-00309-CR, 2017 WL 4844442, at *2 (Tex. App.—Eastland Oct. 26, 2017, no pet.) (mem. op., not designated for publication) (shovel held to be a deadly weapon); *Bryant v. State*,

9

No. 11-14-00188-CR, 2016 WL 2620701, at *2 (Tex. App.—Eastland May 6, 2016, no pet.) (mem. op., not designated for publication) (glass vase held to be a deadly weapon); *Hammons v. State*, 856 S.W.2d 797, 801 (Tex. App.—Fort Worth 1993, pet. ref'd) (a baseball bat wielded by an adult was held to be a deadly weapon).

Moreover, the trial court submitted in its charge the lesser-included offense of misdemeanor assault. Despite this submission, the jury instead convicted Appellant of the greater offense of aggravated assault—an assault that became "aggravated" by Appellant's use of a deadly weapon, the crowbar, against Galindo.

Because sufficient evidence supports the jury's deadly weapon finding, we overrule Appellant's sole issue on appeal.[1]

### III. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

July 13, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[1]We note that Appellant does not challenge the sufficiency of the evidence in support of the remaining elements of the aggravated-assault offense for which he was convicted.