

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00055-CR

ELISHA LINVILLE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 66th District Court
Hill County, Texas
Trial Court No. 39,010

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

In August 2015, Elisha Linville had been staying a few days with his uncle, Ben Johnson, in Johnson's travel trailer. When Johnson confronted Linville about several issues he had with Linville's living habits, a brief altercation ensued, an altercation that ended abruptly when Linville struck Johnson with a garden rake, rendering him unconscious. The offshoot of this fracas was the indictment of Linville for aggravated assault with a deadly weapon.[1] After a bench trial, the 66th Judicial District Court of Hill County[2] found Linville guilty and, after punishment was enhanced for two prior felony convictions, sentenced him to fifty years' imprisonment.[3]

On appeal, Linville argues (1) that the evidence was insufficient to support a finding (a) that he caused bodily injury to Johnson or (b) that he used or exhibited the rake as a deadly weapon and (2) that the trial court erred in not granting his motion for new trial. We find that the evidence was sufficient to support the trial court's findings and that the trial court did not abuse its discretion in denying Linville's motion for new trial.

## I. Sufficient Evidence Supports the Trial Court's Findings

### A. Standard of Review

Linville's first two points of error require us to review the legal sufficiency of the evidence supporting the trial court's judgment. In reviewing the legal sufficiency of the evidence, we review

---

[1]See TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[2]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. See TEX. R. APP. P. 41.3.

[3]See TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2016).

all the evidence in the light most favorable to the trier of fact's verdict to determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). Further, in a bench trial, the trial court "is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony." *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). As the trier of fact, the trial court may believe one witness and disbelieve another "and may resolve inconsistencies in the testimony of any witness." *Oliver v. State*, No. 06-07-00180-CR, 2008 WL 2596214, at *2 (Tex. App.—Texarkana July 2, 2008, no pet.) (mem. op., not designated for publication) (citing *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a measure the courts call a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Based on the indictment and the statute, the State was required to prove beyond a reasonable doubt that on or about August 18, 2015, Linville (1) intentionally, knowingly, or recklessly (2) caused bodily injury (3) to Johnson (4) by striking him with a rake (5) which, in the manner of its use or intended use, was capable of causing death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2016), § 22.02(a)(2); *Baltazar v. State*, 331 S.W.3d 6, 7 (Tex. App.—Amarillo 2010, pet. ref'd). Linville only challenges the sufficiency of the evidence that he caused bodily injury to Johnson and that during the assault, he used or exhibited the rake which (in the manner of its use) was capable of causing death or serious bodily injury.

### B.    *The Evidence at Trial*

At trial, Johnson was the only witness called by the State. Johnson testified that his nephew, Linville, had been staying with him in his travel trailer for a few days. According to Johnson, because of the limited living space in the trailer, they chafed each other's nerves. Johnson stated that he had not slept well the night before the incident because Linville entered and exited the trailer several times, keeping him awake. Johnson was aggravated upon rising that morning, and as he prepared coffee, he instructed Linville to cease cluttering up the place, to be quieter, and to quit "laying around" all day. Johnson testified that Linville jumped at him very aggressively and cursed him. Johnson told Linville to leave, and they kept exchanging words as they went toward the door. Johnson said that Linville then put his hands on him, and Johnson spun Linville around and pushed him out the door and toward a tree that was in the yard. Johnson then went back to the porch. Johnson said that when he turned around, he saw Linville coming at him with

4

a garden rake, which he was holding in the same fashion as one would a baseball bat, and struck Johnson with the rake slightly above and behind his right ear. The blow knocked him back into the trailer and he was rendered unconscious. Upon regaining consciousness, Johnson saw Linville about sixty yards from where he lay, walking off the property. Johnson also testified that he initially thought that eighty dollars was missing from a jar he kept in a cabinet, but that he found it a few days later.

Johnson testified that the rake has a fiberglass handle with metal tines and believed that he had been struck by the handle portion. At trial, he did not remember telling the investigating officer that he saw the metal tines of the rake coming at his head. He testified that he saw the whole rake coming at him but acknowledged that his memory of the event after he was struck was rather foggy. During a re-enactment of the incident with the district attorney, Johnson testified that initially he saw the handle portion up and back, and the tines down, and that he may have been struck by the handle end. He also testified that Linville struck with enough force that the handle of the rake was split.

Later that morning, Johnson called his wife, Caroline, who came to check his status, and she telephoned the emergency 9-1-1 number about three hours after the incident. Johnson testified that the primary purpose of his wife's call was to elicit medical help for him, not to report his nephew's conduct to the sheriff. When emergency medical services personnel (paramedics) examined Johnson, they advised him that it was likely that he had suffered a concussion and recommended that he go to the hospital. He told them he was okay and that his wife said she

5

would stay with him, and Johnson refused to go for treatment. The paramedics told Caroline to keep a close eye on him since he probably had a concussion.

Sergeant Adam Tovar of the Hill County Sheriff's Department also responded to the 9-1-1 call. He testified that when he arrived, the paramedics were attending to Johnson's injuries. He also testified that he neither saw any visible injuries to Johnson's head nor any bandage on it, but that he conducted no examination. He also acknowledged that while he was interviewing Johnson, Johnson asked to sit down because of his head injury. Tovar testified that Johnson indicated then that he had grabbed Linville forcibly by the arm and pushed him toward a tree. Tovar further stated that Johnson told him that Linville came at him with a "garden digging fork," that he was caught off guard, and that he noticed the metal forks coming towards him, then blacked out. He said that Johnson also showed him the rake, which was located a couple of feet from the doorway of the trailer, but did not say anything about any damage to the rake.

The ambulance records from CareFlite (the company providing the emergency medical personnel and equipment) were admitted into evidence at trial. The records reflected that although Johnson was offered treatment and transport, he refused. They also indicated that Johnson and his wife reported that he lost consciousness for less than a minute and that he experienced some dizziness after recovering consciousness, as well as a headache since the event. The records also reflect that Johnson was warned about his symptoms and possible negative outcomes from his failure to allow treatment and transport. Under the "Initial Assessment" portion of the records, it notes that for the head, there were no abnormalities noted, but also states, "Not Done."

6

Linville testified that Johnson woke him up that morning in a belligerent manner and that Linville jumped up fearfully and backed away from him. He said that Johnson stated that he was tired of him bringing stuff in the house and that he told Johnson that he would take his stuff and leave. He also stated that the two argued, during which he cursed Johnson and told him that there was no reason for Johnson to wake him and immediately begin complaining to him. Linville testified that he grabbed his shoes and walked out of the door, then Johnson jumped him from behind and pushed him into a tree. He said he pushed Johnson off of him and pushed him away. When he did so, Johnson fell down halfway into the trailer. Linville stated that he then walked away wearing socks and no shirt and carrying his shoes. Linville claimed that Johnson got up and followed him, yelling at him halfway down the driveway. He said that Johnson was conscious the whole time. Linville denied that he had picked up the rake, much less that he struck Johnson with it.

Linville also testified that the day before the incident, Johnson had given him forty dollars to go to the store to purchase a telephone card and cigarettes. He said that Johnson told him that was all the money he had, that he was trying to hold on to it because he owed his wife fifty dollars, but that he needed a telephone card. After he purchased the items, Linville said he returned to the trailer and gave Johnson the items and nine dollars change. He said that Johnson then told him again that that was all the money he had. Linville also testified that he thought Johnson brought the false charges against him to cover up the fact that Johnson did not have the fifty dollars that he owed his wife.

Johnson's sister, Eddie Jeannette Richardson, also testified on behalf of Linville, her nephew. She testified that Caroline had called her the morning of the incident, told her what happened, and asked her to take her to Johnson's house. She said that when they arrived, Johnson was standing at the end of the driveway, which was about one-quarter mile from his trailer. She said that Johnson was at her car door and that she did not see any visible injury, but that she did not get out of the car and did not examine his head. Richardson indicated that Johnson had previously exhibited a bad temper and that she had seen him "act out" previously. In contrast, she testified that she had been around Linville on many occasions before, that he had always been helpful to her, and that she had never known him to act out. She admitted, however, that she knew that Linville has previously been convicted, on more than one occasion, of assaulting a family member.

## C.    Analysis

### 1.    There Was Sufficient Evidence of Bodily Injury

In his first point of error, Linville asserts that there was insufficient evidence to support the trial court's findings that he caused bodily injury to Johnson. Linville argues that Johnson was inconsistent in his testimony regarding how long he remained unconscious and that there was testimony from Linville that Johnson was never unconscious. He also points to the CareFlite records and the testimony of Tovar and Richardson, none of which, he argues, noted any obvious injuries to Johnson. He also points to the 9-1-1 call placed by Caroline and argues that she said nothing regarding any visible injuries.

8

"Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2016). Bodily injury may be "[a]ny physical pain, however minor." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012) (citing *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)). Since people of common intelligence are capable of understanding pain and what causes it, a fact-finder may infer that the victim suffered physical pain based on the circumstances of the injury. *Id.*; *see Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.) (physical pain inferred from statement by victim that assailant had hit her in the back of the head). "Physical impairment" has been interpreted "to include the diminished function of a bodily organ." *Garcia*, 367 S.W.3d at 688.

Johnson testified that the blow from the rake was sufficiently strong to knock him down into the trailer, to render him unconscious, and to crack the handle of the rake. Although he was not certain how long he remained unconscious, he was clear that the blow from the rake rendered him unconscious. The trial court, as the trier of fact, was free to believe this testimony and to discredit Linville's conflicting testimony. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). In addition, the CareFlite records state that Johnson reported having lost consciousness, being dizzy, and suffering a headache for the period succeeding the event. Also, although Caroline did not mention any visible injuries in her 9-1-1 call, when asked if Johnson needed medical attention, she replied that although he did need that attention, he could not afford it. Further, although neither Tovar nor Richardson made note of any obvious injuries to Johnson, both testified that they did not examine him. Finally, although the CareFlite records do not note any abnormalities, they also indicate that Johnson refused treatment and that an examination was

9

not performed. When viewed in the light most favorable to the verdict, a rational fact-finder could find that the blow from Linville caused Johnson both pain and impairment of his brain function. Therefore, we find that there is sufficient evidence to support the finding of bodily injury. We overrule Linville's first point of error.

### 2. There Was Sufficient Evidence that a Deadly Weapon Was Used or Exhibited

In his second point of error, Linville challenges the sufficiency of the evidence showing the use or exhibition of a deadly weapon during the commission of the assault. He argues that there is no evidence that the rake, in the manner of its use or intended use, was capable of causing death or serious bodily injury. He points to the alleged inconsistencies in Johnson's testimony, the lack of serious bodily injury suffered by Johnson, and the lack of expert or lay witness testimony to affirmatively state that the rake was a deadly weapon.

Under the Penal Code, a "deadly weapon" may either be an object that is designed to inflict death or serious bodily injury, or an object "that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A), (B) (West Supp. 2016). Although a rake is not designed for use as a weapon, this matter demonstrates that it can be used for that purpose. Something as mundane as water has been deemed a deadly weapon for the purpose of the statute. *Gilbert v. State*, 769 S.W.2d 535, 536–37 (Tex. Crim. App. 1989). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2016). In this case, the State was not required to show that the use or intended use caused death or serious bodily

10

injury, but rather that the "use or intended use is *capable* of causing death or serious bodily injury."

*Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). Proof of a deadly weapon does not require expert testimony or a description of the weapon, rather "the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used." *Id.* at 691–92 (citing *Morales v. State*, 633 S.W.2d 866, 868–69 (Tex. Crim. App. 1982)).

To determine whether an object is capable of causing death or serious bodily injury, we consider several factors, including:

> (1) the physical proximity between the victim and the object, *Tisdale v. State*, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984) (op. on reh'g); (2) the threats or words used by the assailant, *Williams v. State*, 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979); (3) the size and shape of the weapon, *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); (4) the weapon's ability to inflict death or serious bodily injury, *id.*; and (5) the manner in which the defendant used the weapon. *Id.*

*Nash v. State*, 175 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, pet. ref'd). However, each case is determined by its own facts, and no one factor is determinative. *Id.* (citing *Brown v. State*, 716 S.W.2d 939, 946–47 (Tex. Crim. App. 1986)).

In this case, Johnson testified at trial that Linville swung the rake like a baseball bat, striking him with the handle portion slightly above and behind the right ear. He also testified that the blow was sufficiently severe to cause the fiberglass handle to crack, to knock him to the ground, and to render him unconscious. In addition, Johnson and the district attorney re-enacted the altercation at trial, demonstrating how Linville held and swung the rake. Also, Tovar testified that Johnson told him on the day of the incident that when Linville swung the rake, Johnson saw the metal tines coming toward him. Finally, the rake was introduced into evidence so the trial court,

11

as fact-finder, was able to examine the rake as part of its determination of whether the rake was capable of causing death or serious bodily injury. Although the State did not assert that the injury actually caused by the blow was a serious bodily injury, this does not mean that in the manner of its use, it was not *capable* of causing death or serious bodily injury. Rather, based on this evidence, a rational fact-finder could conclude that the rake, swung like a bat at Johnson's head, was capable of causing a protracted loss or impairment of an eye or ear, or even death, depending on where the blow struck. Therefore, we find that sufficient evidence showed that a deadly weapon was used or exhibited during the commission of the assault on Johnson. We overrule Linville's second point of error.

## II.     *No Trial Court Error in Not Granting a New Trial*

### A.     *Background*

At trial, Linville sought to solicit testimony that Johnson had a financial motivation to bring false charges against him. On cross-examination of Johnson, Linville solicited testimony that shortly before the day of the assault, Johnson's wife had sent him fifty dollars to get his truck home after it had broken down in another town. Johnson denied that he owed this money to his wife, explaining, "Just like if I had given her $50, she wouldn't owe me $50." Linville also attempted to show through Johnson that Linville had not taken the eighty dollars from the cabinet that Johnson initially thought was missing after the assault. Johnson explained that he had worked the day before for his next-door neighbor, Bennie Baptisto, who had paid him in cash. Johnson admitted giving Linville forty dollars to purchase cigarettes and a telephone card one day, but was not sure if it was the day before the assault. He denied telling Linville that that was all the money

12

he had. When the State objected to the line of questioning, Linville explained that it was his contention that Johnson made up the story about the missing eighty dollars and that he made a false report regarding the assault to hide the fact that he did not have fifty dollars to repay his wife.

Linville testified that he had helped Johnson do some work next door the day before, but that Baptisto only paid on Saturdays. He also testified that Johnson had given him forty dollars the day before the incident with which to purchase cigarettes and a telephone card and that Johnson commented several times that that was all of his money. Linville also said that Johnson told him he was reluctant to spend the money because he owed his wife fifty dollars.

At the end of the guilt/innocence phase, the trial court recessed the proceedings and informed the parties that it would pronounce its verdict at a later time. Almost three weeks later, the trial court pronounced Linville guilty and again recessed the proceedings, informing the parties that it wanted to allow enough time for them to subpoena witnesses for the punishment hearing. Three weeks later (almost a week before the punishment hearing), Linville filed a motion to reopen testimony, including a motion for new trial,[4] in which he asserted that it was his desire to offer testimony from unnamed witnesses that would testify that certain unspecified testimony previously given at trial was untrue. The motion was neither sworn nor supported by affidavits.

Prior to commencing the punishment hearing, the trial court held a hearing on Linville's motion. Although Linville neither subpoenaed any witnesses nor brought any to the hearing, he informed the trial court that he had new evidence that Johnson owed his wife eighty dollars.

---

[4]The motion asserted grounds under Articles 36.02 and 40.001 of the Texas Code of Criminal Procedure. Article 36.02 allows testimony to be introduced at any time before the conclusion of argument. TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). Article 40.001 provides, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006).

Linville's counsel represented to the trial court that Glen Adair would testify that he delivered eighty dollars from Caroline to Johnson so that Johnson could get his truck repaired. Linville also said that he anticipated that Caroline would confirm Adair's testimony. He also stated that Baptisto would testify, if subpoenaed, that he only pays on Saturday and that Johnson had not worked for him for at least two weeks before the assault. Linville argued that these witnesses would cast substantial doubt on Johnson's credibility. In addition, Linville sought to introduce photographs of the rake taken by Tovar the day of the incident, asserting that the photographs reveal no crack in the rake handle. Linville acknowledged that he possessed the photographs of the rake at the time of the guilt/innocence hearing, but explained that he was surprised by Johnson's trial testimony that he was struck by the handle of the rake. The trial court did not rule on and no further hearing was held on the motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

In his third point of error, Linville asserts that the trial court erred in not granting a new trial based on newly discovered evidence. He argues that the new evidence would diminish Johnson's credibility and bolster Linville's assertion that Johnson had a financial motive to bring false charges against him. In addition, he claims that Johnson's revision of his story regarding being hit by the handle of the rake and its cracking constituted a surprise justifying a new trial. On appeal, Linville does not complain of being denied a hearing on his motion for new trial, taking the position that his record made at the pre-punishment phase hearing sufficed as the hearing. Neither does Linville complain of the denial of his motion to reopen evidence.

14

## B.    Standard of Review

We review the denial of a motion for new trial for an abuse of discretion. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Davis v. State*, 276 S.W.3d 491, 501 (Tex. App.—Waco 2008, pet ref'd). In our review, we determine whether "the trial court's decision was arbitrary or unreasonable," and "[w]e do not substitute our judgment for that of the trial court." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

## C.    Analysis

A defendant is not entitled to a hearing on his motion for new trial unless "the motion and accompanying affidavit(s) "rais[e] matters not determinable from the record, upon which the accused could be entitled to relief." *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (quoting *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)). In addition, "the motion must be supported by an affidavit specifically showing the truth of the grounds for attack." *Martinez v. State*, 74 S.W.3d 19, 21 (Tex. Crim. App. 2002) (citing *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000)). As previously noted, the motion for new trial made only general allegations of newly discovered evidence and was neither sworn to nor accompanied by any affidavits. Therefore, Linville was not entitled to a hearing on his motion for new trial.

Nevertheless, the trial court gave Linville a hearing on his motion. The purpose of a hearing on a motion for new trial "is to give the defendant an opportunity to fully develop the matters raised in his motion." *Wallace*, 106 S.W.3d at 108 (citing *Martinez*, 74 S.W.3d at 21). When given that opportunity, although Linville's attorney made statements regarding the evidence he believed would be available, he failed to bring a single witness to testify at the hearing. Even

15

though he acknowledged that he could have subpoenaed his witnesses, he chose not to do so. Therefore, there was no testimony by any witness evidencing that material evidence favorable to Linville had been discovered since the trial.[5] *See* TEX. CODE CRIM. PROC. ANN. art. 40.001. Further, Linville acknowledged that he was in possession of the photographs of the rake at the time of the guilt/innocence hearing and that he chose not to put them in evidence since the rake itself was introduced. Therefore, the photographs do not constitute newly discovered evidence. On this record, we find that the trial court did not abuse its discretion in denying Linville's motion for new trial. We overrule Linville's third point of error.[6]

### III. *Modification of Judgment*

During our review, we noticed that under a section with the heading "Terms of Plea Bargain" the judgment provides, "FIFTY YEARS IN THE INSTITUIONAL DIVISION-TDJC." However, the remainder of the judgment and the record reflect that Linville pleaded not guilty to the offense and that punishment was imposed after a full punishment hearing. This Court has authority to modify the judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.).

---

[5]We also note that even if the witnesses had been present and had testified as Linville represented, a new trial would not be warranted, since there was no showing that this testimony was unknown to Linville or, if unknown, that the failure to discover the evidence was not due to Linville's lack of diligence. *See Davis* 276 S.W.3d at 501.

[6]Since we have found no error on the part of the trial court, we do not address Linville's fourth point of error that asserts that the error committed by the trial court was not harmless.

16

We modify the judgment by deleting the entry under the "Terms of Plea Bargain" section.

As modified, we affirm the judgment.

Bailey C. Moseley
Justice

Date Submitted:     August 17, 2016
Date Decided:       August 18, 2016

Do Not Publish